James Dyral **BRILEY**, Appellant,

v.

Gary L. **BASS**, Warden, Appellee.

No. 84–4001.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1984.

Decided Dec. 28, 1984.

---

James X. Dempsey, Washington, D.C.
(Arnold & Porter, Washington, D.C., Gerald T. Zerkin, Zerkin, Wright & Heard,

Richmond, Va., Richard J. Wertheimer, Washington, D.C., on brief), for appellant.

Donald R. Curry, Asst. Atty. Gen., Richmond, Va. (Gerald L. Baliles, Atty. Gen., Richmond, Va., on brief), for appellee.

Before WIDENER, PHILLIPS and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

James Dyral Briley, under sentence of death for two capital murders, appeals from the dismissal of his petition for a writ of habeas corpus by the United States District Court. We find no merit in his contentions, and we affirm the decision of the District Court.

Petitioner was convicted in a bifurcated jury trial in the Circuit Court of the City of Richmond, Virginia, in January 1980 of the capital murder of five year old Harvey Barton during the commission of an armed robbery, and the capital murder of Judy Barton, Harvey's mother, during the commission of or subsequent to rape,[1] as well as several other non-capital crimes.[2] In the penalty stage of the bifurcated trial, the jury recommended death for both capital murders, and the state trial court imposed sentence accordingly. On direct appeal the Supreme Court of Virginia affirmed Briley's convictions and sentences, *(James Dyral) Briley v. Commonwealth*, 221 Va. 563, 273 S.E.2d 57 (1980), and Briley did not seek certiorari from the United States Supreme Court. Petitioner filed for writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Virginia on March 5, 1981; the district court dismissed that petition. This Circuit on appeal stayed execution and remanded with instructions to retain jurisdiction and hold the case in abeyance pending completion of petitioner's state habeas corpus proceedings, instituted on March 16, 1981. Our stay has heretofore remained in effect. The state circuit court dismissed all but two of petitioner's numerous collateral claims without a hearing, and rejected the remaining two, including an ineffective assistance of counsel claim, following an evidentiary hearing. The Virginia Supreme Court, in an unpublished opinion refusing Briley's petition to appeal, found no error in the rulings below, and the United States Supreme Court denied certiorari, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 367 (1983). Petitioner filed on June 3, 1983 the amended petition for a writ of habeas corpus which is the subject of this appeal. The district court, pursuant to an extensive magistrate's opinion, dismissed that petition on June 22, 1984.

We need not recount the facts of these brutal murders on the evening of October 19, 1979, involving James Briley, his brothers Linwood[3] and Anthony, and their sixteen year old accomplice Duncan Eric Meekins, as this background is fully discussed in the opinion of the Virginia Supreme Court. *See* 273 S.E.2d at 58–60. Petitioner did not testify at trial, and the Commonwealth relied principally on the testimony of Meekins, who had entered into a plea bargain with the Commonwealth.

On this appeal, petitioner presents multiple claims of error in three categories:

1) constitutionality of jury instructions and other procedures at the penalty stage of the bifurcated trial;

---

**1.** Va.Code § 18.2–31(d), (e). The identical subsections were effective under the former statute at the time of petitioner's trial. Where this opinion cites to sections of the Virginia Code, the relevant law does not differ materially from that then in effect.

**2.** James Briley was also convicted of the first-degree murder of Harvey Wilkerson, father of Harvey Barton. As a principal in the second degree rather than the immediate perpetrator, *see* Va.Code § 18.2–18, he could not be sentenced to death. *Johnson v. Commonwealth,*

220 Va. 146, 255 S.E.2d 525 (1979). Additional convictions were for the robbery of Harvey Wilkerson, the rape of Judy Barton, and the use of a firearm during the commission of each of the foregoing offenses.

**3.** This Circuit affirmed the denial of Linwood Briley's habeas petitions in *(Linwood E.) Briley v. Bass*, 742 F.2d 155 (4th Cir.1984), and *(Linwood E.) Briley v. Booker*, 746 F.2d 225 (4th Cir.1984).

2) exclusion of prospective jurors on the basis of inability to impose the death penalty; and

3) ineffective assistance of counsel. We shall consider these claims in turn.

## I

Analysis of petitioner's first claim requires a brief review of the Virginia capital sentencing statute. Once a defendant has been found guilty at the first stage of a bifurcated trial of one or more of the classes of capital murder enumerated in Va.Code § 18.2–31, the trial proceeds to the penalty stage. Va.Code § 19.2–264.3. Virginia law requires that the jury at the penalty stage find either of two specific aggravating circumstances proven beyond a reasonable doubt before the death penalty can be imposed. These aggravating circumstances are:

a) "that there is a probability [based upon consideration of the defendant's past criminal record] that the defendant would commit criminal acts of violence that would constitute a continuing serious threat to society;" or

b) "that his conduct in committing the offense ... was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind or an aggravated battery to the victim." [4] Va.Code § 19.2–264.2(1). *See also* Va.Code § 19.2–264.4C, D.

If one or both of these circumstances are present, the jury must still decide whether to recommend the death penalty. Va.Code § 19.2–264.2(2). In doing so, the jury is required to consider "the evidence in mitigation of the offense," as stated on the statutory jury verdict forms. Va.Code § 19.2–264.4D. The Virginia Supreme Court has held that, notwithstanding a showing of aggravating circumstances, the jury is at liberty under the capital sentencing statute to recommend life imprisonment. *Smith v. Commonwealth,* 219 Va. 455, 248 S.E.2d 135, 150 (1978), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979). A list of five non-exclusive mitigating circumstances appears in the statute,[5] but the defense is permitted to introduce any evidence relevant to the penalty decision, including "the circumstances surrounding the offense, the history and background of the defendant, and any other facts in mitigation of the offense." Va. Code § 19.2–264.4B.

At the penalty stage of Briley's trial, the Commonwealth presented two witnesses, a former police officer and a state records custodian, who testified concerning James Briley's prior convictions for armed robbery and attempted shooting of a police officer, and Briley's record while in prison. The defense offered one witness, Briley's parole officer, who testified that Briley had a good employment record following his release from prison in August 1979, and had appeared before a state judge for a parole hearing on the day of the Barton murders. The trial judge then instructed the jury, stating the aggravating circumstances and explaining the statutory jury verdict forms for each capital murder. Fol-

---

**4.** In *Smith v. Commonwealth,* 219 Va. 455, 248 S.E.2d 135 (1978), *cert. denied,* 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979), the Virginia Supreme Court construed the words "aggravated battery" to mean, in the context of the capital sentencing statute, a battery more culpable than "the minimum necessary to accomplish an act of murder." 248 S.E.2d at 149. Accordingly, the trial court's instructions modified the second aggravating circumstance to incorporate this construction.

**5.** The enumerated mitigating circumstances are as follows:

(i) the defendant has no significant history of prior criminal activity;

(ii) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance;

(iii) the victim was a participant in the defendant's conduct or consented to the act;

(iv) at the time of the commission of the capital felony, the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was significantly impaired; or

(v) the age of the defendant at the time of the commission of the capital offense. Va.Code § 19.2–264.4B.

lowing instructions and closing arguments by the Commonwealth and defense, the jury retired. After three quarters of an hour, the jury returned its verdicts, fixing Briley's punishment for both capital murders at death. The court polled the jury, and each juror affirmed that he or she had found both aggravating circumstances to exist and agreed with the verdicts for both offenses. At no time during trial was any objection taken by the defense to the form of the instructions.[6]

## II

Petitioner's initial claim is that the instructions given by the trial judge to the jury at the penalty stage of the trial were constitutionally flawed because they failed to inform the jury adequately of its option to recommend life imprisonment and its obligation to consider mitigating circumstances. We find, however, that the instructions as given, reprinted in full at Appendix A of this opinion, present no constitutional error, and therefore reject petitioner's claim.

A. Petitioner focuses on a single phrase in the instructions as the foundation of his claim that the jury was not informed adequately of the option to recommend life imprisonment. After presenting the two aggravating circumstances for the first time, the trial judge stated:

"If you find from the evidence that the Commonwealth has proven beyond a rea-

sonable doubt either of the two alternatives, then *you shall fix the punishment of the defendant at death;* or if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the defendant at life imprisonment." (emphasis added).

Standing alone, the mandatory "shall" would pose constitutional difficulties, suggesting to a jury that a finding of an aggravating circumstance required imposition of the death penalty.[7] No statute or instruction may strip from the jury its power of life. Mandatory death sentences are unconstitutional, condemned by the Supreme Court in *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976) and *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) as violative of the Eighth and Fourteenth Amendments because of their "lack of focus on the circumstances of the particular offense and the character and propensities of the offender," *Roberts,* 428 U.S. at 333, 96 S.Ct. at 3006 (opinion of Stewart, Powell and Stevens, JJ.). It is clear that a sentencing jury must be allowed, in all but the rarest kind of capital cases, to consider as a mitigating factor "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978) (opinion of Burger,

---

**6.** The Commonwealth contends that petitioner's challenge to the jury instructions is now barred by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), as petitioner failed to make a timely objection at trial, and has not shown the requisite "cause" and "prejudice" to avoid procedural forfeiture. Petitioner first challenged the jury instructions in issue III of his state habeas petition. The Virginia courts disposed of this issue on collateral review, however, on the alternative grounds of procedural forfeiture, *Slayton v. Parrigan,* 215 Va. 27, 205 S.E.2d 680 (1974), *cert. denied sub nom. Parrigan v. Paderick,* 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975), and authoritative resolution of the issue on the merits, *Clark v. Commonwealth,* 220 Va. 201, 257 S.E.2d 784 (1979), *cert. denied,* 444 U.S. 1049, 100 S.Ct. 741, 62 L.Ed.2d 736 (1980). Since the Virginia courts reached

the substantive merits on collateral review, we will do so here.

**7.** The written instruction used at petitioner's trial contained the permissive "may," rather than "shall" as in the oral instruction. Under Virginia practice the written instruction is provided to the jury, *see e.g. Bowles v. Commonwealth,* 103 Va. 816, 48 S.E. 527, 534 (1904), and there is no reason to believe that the practice was not followed at petitioner's trial. We do not, however, rest our decision on the language of the written instruction, as it is uncertain whether the jury followed this language or that actually given by the trial judge; in either case, as discussed *infra,* the instruction does not present an error of constitutional magnitude.

C.J.).[8] *See also Bell v. Ohio,* 438 U.S. 637, 642, 98 S.Ct. 2977, 2980, 57 L.Ed.2d 1010 (1978) (opinion of Burger, C.J.). A capital sentencing system which allowed the jury to consider only aggravating circumstances would be barred under *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), because of its similarity to the mandatory laws held unconstitutional in *Woodson* and *Roberts. Jurek,* 428 U.S. at 271, 96 S.Ct. at 2956 (opinion of Stewart, Powell, and Stevens, JJ.).

■ In reviewing these instructions, however, we bear in mind that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Reviewing courts must resist the temptation to read jury instructions myopically. As the Supreme Court stated in *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977), the "burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." The governing standard is that stated in *Cupp,* "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," 414 U.S. at 147, 94 S.Ct. at 400, and not merely whether the instruction is "undesirable, erroneous, or even 'universally condemned.' " *Id.* at 146, 94 S.Ct. at 400. We note also that "[i]t is the rare case in which an improper instruc-

tion will justify reversal of a criminal conviction when no objection has been made in the trial court." *Henderson,* 431 U.S. at 154, 97 S.Ct. at 1736. *See also United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.), *cert. denied,* 459 U.S. 1018, 103 S.Ct. 381, 74 L.Ed.2d 513 (1982).

■ Taken as a whole, the instructions leave no doubt that the jury was free to recommend life imprisonment. Immediately after the language in question, the trial judge instructed the jury that "if you believe from all the evidence that the death penalty is not justified," life imprisonment should be imposed. *All the evidence,* we believe, necessarily means that the jury was to consider the evidence presented in mitigation as well as that in aggravation in reaching its decision. A contrary interpretation, in which inquiry ceased after the finding of an aggravating circumstance, would have rendered the presentation of the case in mitigation by the defense inexplicable to the jury, as the evidence was irrelevant to either of the statutory aggravating circumstances. Our view finds further support in the trial judge's reading of the statutory jury verdict forms for each of the capital murders, which contained the phrases "having considered the evidence in mitigation of the offense" and "having considered all the evidence in aggravation and mitigation of such offense." This language is mandated by Va.Code § 19.2–264.-4D and was also embodied in the written verdict forms upon which the jury rendered its sentencing decision for each murder.[9]

8. The Court in *Lockett* expressed no opinion as to whether the need to deter certain unique forms of homicide such as murder by a prisoner or escapee under a life sentence could justify a mandatory death penalty. 438 U.S. at 604 n. 11, 98 S.Ct. at 2964 n. 11 (opinion of Burger, C.J.).

9. The jury verdict forms read as follows:

ALTERNATIVE JURY VERDICTS

Cross out any paragraph, word or phrase which you do not find beyond a reasonable doubt.

We, the jury, on the issue joined, having found the defendant guilty of capital murder of Harvey Wayne Barton [Judy Diane Barton] during the commission of robbery while armed

with a deadly weapon [and/or during the commission of or subsequent to rape] and having found that, after consideration of his past criminal record that there is a probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society,

and/or

his conduct in committing the offense is outrageously or wantonly vile, horrible or inhuman in that it involved torture (depravity of mind; aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder) and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death.

Thus, the jury was instructed no less than five times to consider "all the evidence," the evidence in "mitigation," or both, in arriving at its verdicts. The instructions leave the definite impression that the jury was to take into account such evidence as was presented in mitigation and to exercise discretion in reaching a verdict on sentencing, rather than automatically imposing the death sentence upon finding an aggravating circumstance. Petitioner's contention falls far short of satisfying the standard of *Cupp* and *Henderson* for reversal on collateral review, that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."

■ B. Petitioner contends that the trial judge's failure to offer a fuller explanation of the concept of mitigation renders the sentences unconstitutional. We disagree. The Supreme Court has never attempted to prescribe the precise form that state jury instructions must take. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) requires that a jury be given guidance in reaching the sentencing decision, 428 U.S. at 192–93, 96 S.Ct. at 2934 (opinion of Stewart, Powell and Stevens, JJ.). This condition is satisfied, however, where there exists a "carefully drafted statute" and "the sentencing authority is required to specify the factors it relied upon in reaching its decision." *Id.* at 195, 96 S.Ct. at 2935. Here, the jury's discretion was channeled by the necessity of finding at least one of the specific aggravating circumstances before capital punishment could be considered. Although the trial judge did not instruct the jury on any of the non-exclusive statutory mitigating circumstances, the defense had not sought such an instruction nor offered any evidence to justify it. Moreover, under *Hutchins v. Garrison*, 724 F.2d 1425, 1436–37 (4th Cir.1983), the propriety of such an instruction was purely a matter of state law and not cognizable by a federal

court on habeas review. Instructing on the specific mitigating circumstances might even have been harmful to Briley in certain respects. For example, referring to the "no significant history of prior criminal activity" circumstance, Va.Code § 19.2–264.4B(i), would only have served to focus still further attention on Briley's substantial record of serious offenses, including armed robbery and attempted murder of a police officer.

Petitioner's inadequate guidance claim rests on several decisions of the Fifth and Eleventh Circuits, *see Westbrook v. Zant*, 704 F.2d 1487, 1503 (11th Cir.1983); *Goodwin v. Balkcom*, 684 F.2d 794, 801–03 (11th Cir.1982), *cert. denied*, 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983); *Spivey v. Zant*, 661 F.2d 464, 471–72 (5th Cir.1981), *cert. denied*, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982); *Chenault v. Stynchcombe*, 581 F.2d 444, 448 (5th Cir. 1978), which evidence a willingness to engage in detailed scrutiny of state jury instructions on collateral review. *Spivey*, for example, mandates that the state judge in most cases "clearly and explicitly instruct the jury about mitigating circumstances and the option to recommend against death; in order to do so, the judge will normally tell the jury what a mitigating circumstance is and what its function is in the jury's sentencing deliberations." 661 F.2d at 471. All the cases upon which petitioner relies, however, were decided prior to *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), in which the Supreme Court ruled that "the Constitution does not require a State to adopt specific standards for instructing the jury in its consideration of aggravating and mitigating circumstances." 103 S.Ct. at 2750. *See also id* at 2742 n. 13.

Under *Zant*, "[w]hat is important at the selection stage is an *individualized* determination on the basis of the character of

---

OR

We, the jury, on the issue joined, having found the defendant guilty of capital murder of Harvey Wayne Barton [Judy Diane Barton] during the commission of robbery while armed with a deadly weapon and having considered all of the evidence in aggravation and mitigation of such offense, fix his punishment at imprisonment for life.

the individual and the circumstances of the crime," 103 S.Ct. at 2743–44 (emphasis in original), and the "absence of legislative or court-imposed standards to govern the jury in weighing the significance" of the various factors is not dispositive. *Id.* at 2744. It is inappropriate for the federal courts on collateral review to go beyond the correction of fundamental errors implicating due process rights and attempt to prescribe the particular form which state jury instructions on mitigation must take, becoming mired in the nuances of definition and technicalities of draftsmanship. We hold that the instructions given here satisfied the essential requirements of due process under the Eighth and Fourteenth Amendments, in that they did not render the death sentence in any way mandatory or preclude consideration of any relevant mitigating evidence.

C. Next, petitioner contends that the aggravating circumstance of conduct "outrageously or wantonly vile, horrible or inhuman," Va.Code § 19.2–264.2(1), has not been sufficiently defined by the Virginia Supreme Court or explained by the trial court's instructions so as to "genuinely narrow the class of persons eligible for the death penalty," as required by *Zant v. Stephens*, 103 S.Ct. at 2742–43. He relies upon *Godfrey v. Georgia*, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), which reversed a death sentence where the Georgia courts had applied so broad and vague a construction of a statutory "vileness" aggravating circumstance as to allow the death penalty to be imposed in virtually any murder case. 446 U.S. at 428–29, 432–33, 100 S.Ct. at 1764–65, 1766–67 (opinion of Stewart, J.).

Petitioner's case is different from *Godfrey*. Petitioner's conduct was found to fit all three "vileness" subcategories of "torture," "depravity of mind," and "aggravated battery," while only the "depravity of mind" subcategory was potentially applicable to the defendant in *Godfrey*. *See* 446 U.S. at 432–33, 100 S.Ct. at 1766–67. Furthermore, petitioner was not sentenced to death solely on the basis of a finding of the "vileness" circumstance alone, as in *Godfrey*, but also on the basis of the alternative aggravating circumstance of future dangerousness, a "probability that the defendant would commit criminal acts of violence that would constitute a continuing serious threat to society." Va.Code § 19.-2–264.2(1). The constitutionality of this alternative ground is beyond question, as an identical provision in the Texas capital sentencing statute was upheld in *Jurek v. Texas*, 428 U.S. 262, 272–74, 96 S.Ct. 2950, 2956–57, 49 L.Ed.2d 929 (opinion of Stewart, Powell and Stevens, JJ.). Thus, even if the "vileness" circumstance were somehow unconstitutionally applied,[10] which we do not suggest, we would not be required to vacate the death sentence under *Zant v. Stephens*, which holds that "a death sentence supported by at least one valid aggravating circumstance need not be set aside ... simply because another aggravating circumstance is 'invalid' in the sense that it is insufficient by itself to support the death penalty." [11] 103 S.Ct. at 2746. We have recently dealt with and rejected a similar challenge to a "vileness" instruction in *(Linwood E.) Briley v. Bass*, 742 F.2d 155, 165–66 (4th Cir.1984), and we find petitioner's claim no more persuasive.[12]

10. The "vileness" circumstance in the Georgia capital sentencing statute, identical to Virginia's language at issue here, was sustained against a facial challenge in *Gregg v. Georgia*, 428 U.S. 153, 201, 96 S.Ct. 2909, 2938, 49 L.Ed.2d 859 (opinion of Stewart, Powell and Stevens, JJ.).

11. The Supreme Court reserved judgment in *Zant v. Stephens* on the effect of an invalid aggravating circumstance under a statutory scheme "in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its dis-

cretion whether to impose the death penalty." 103 S.Ct. at 2750. The Virginia statute, however, is similar to the Georgia statute at issue in *Zant* in that it imposes no such specific weighing standards, as we recognized in *(Linwood E.) Briley v. Bass*, 742 F.2d at 166.

12. We note that no evidence was introduced on "vileness" separately at the penalty stage of the bifurcated trial; rather, the jury's verdicts on that circumstance were necessarily based upon the evidence of the murders admissible at the guilt stage. *Cf. Zant*, 103 S.Ct. at 2748 n. 24 ("if

■ D. Petitioner's final contention concerning the sentencing procedures is that the jury verdict forms were unconstitutionally ambiguous, in that they stated the two aggravating circumstances conjunctively or in the alternative, employing the term "and/or." Supposedly, the jury was thereby permitted to return a verdict which was not unanimous on a particular aggravating circumstance. The prosecutor's argument suggesting the propriety of a nonunanimous verdict on the two circumstances, petitioner argues, compounded this error. Since the jury was polled after the verdicts were rendered, however, and each juror affirmed that both aggravating circumstances were present beyond a reasonable doubt, any error is moot, as we recognized in rejecting a similar claim in *(Linwood E.) Briley v. Bass*, 742 F.2d at 166.

### III

■ Petitioner's second category of issues relates to the trial court's exclusion of two prospective jurors whose reservations about the death penalty allegedly did not rise to the level of opposition required for exclusion under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). We find, however, that the trial judge did not abuse his discretion in excluding both jurors.[13]

*Witherspoon* holds that a juror may not be excluded merely because of conscientious scruples about capital punishment, if he is willing to *"consider* all of the penalties provided by state law," and is not "irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings." 391 U.S. at 522 & n. 21, 88 S.Ct. at 1777 & n. 21 (emphasis in origi-

nal). A state is not barred from excluding jurors who have made it "unmistakably clear" that they would automatically vote against the imposition of the death penalty without regard to the evidence. *Id.* at 522 n. 21, 88 S.Ct. at 1777 n. 21. In *Keeten v. Garrison*, 742 F.2d 129, 135 (4th Cir.1984), we ruled that the question of whether a juror should be stricken under *Witherspoon* is "committed to the trial court's discretion," and will only be reversed for an abuse of discretion. *See also (Linwood E.) Briley v. Booker*, 746 F.2d 225, 227 (4th Cir.1984). This is consistent with the Supreme Court's decision in *Patton v. Yount*, —— U.S. ——, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984), which holds that juror impartiality is a question of historical fact, due a presumption of correctness under 28 U.S.C. § 2254(d) where there is "fair support in the record." 104 S.Ct. at 2891–93. The Court recognized that it is not unusual on *voir dire* examination for the testimony of jurors to be ambiguous or even contradictory, and that the trial judge "is best suited to determine competency to serve impartially." *Id.* at 2893. It is equally reasonable, where some statements by a juror are equivocal and others demonstrate an unwillingness to impose the death penalty in any case, to rely on the trial court's discretion in determining which responses best manifested the juror's true opinions.

One of the jurors in question, Ms. Joyce Candies, asserted that she did not believe in the death penalty. Asked whether she would "hang the jury" rather than impose the death penalty, she was initially uncertain, but finally responded that she would. Furthermore, in response to defense counsel's questions about whether she could not impose the death penalty regardless of the circumstances or the "overwhelming" evi-

---

an invalid statutory aggravating circumstance were supported by material evidence not properly before the jury, a different case would be presented.").

**13.** As with the jury instruction issues above, the Commonwealth contends that petitioner's *Witherspoon* claims are now barred by *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, due to failure to object to the exclusion of

the jurors at trial. Petitioner first challenged the juror exclusion in issue IV of his state habeas petition. The Virginia courts disposed of this issue on the ground of procedural default, and also found, in resolving the ineffectiveness of counsel claim, that the trial court's juror selection procedure complied with *Witherspoon*. In light of this alternative finding on the substantive merits, we will also reach the merits here.

dence, Candies stated, "This is the way I feel right now," and "I don't think I could." We find that the evidence was plainly sufficient to justify the exclusion of Candies under the "abuse of discretion" standard.[14]

The other juror, Ms. Mary Revere, also stated that she did not believe in the death penalty on "conscientious" grounds. The court asked whether, if she were "absolutely positive" that the imposition of the death penalty was proper in this case, she would "hang the jury" before surrendering a conscientious scruple, and she twice responded, "Yes, sir." When asked by defense counsel whether there was no way she could impose the death sentence no matter how bad a particular case, Revere answered, "Well, I say rather than the death sentence, I don't say turn him out, but punish him." There was thus ample reason to believe that this juror would not vote to impose the death penalty in any circumstance, and we find that her exclusion was proper.

Petitioner also contends that the exclusion of any venire member because of his or her attitude toward the death penalty is unconstitutional because it produces a conviction-prone jury. We rejected an identical argument in *Keeten*, 742 F.2d at 133–34, and that decision is controlling here.

### IV

We turn finally to petitioner's claim of ineffective assistance of counsel at both the guilt and penalty stages of the trial. The conduct of petitioner's trial co-counsel, Mr. Hayes and Mr. Turner, has been extensively reviewed by both the Virginia state courts on collateral attack, with the benefit of an evidentiary hearing, and by the magistrate at the district court proceedings below, and none of these reviewing authorities have found counsel to have been inadequate to their task. Nevertheless, we have undertaken our own review of the record in light of the numerous allegations of inef-

fective assistance presented by petitioner, and we find those allegations meritless.

*Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), provides the framework for analysis of ineffective assistance of counsel claims. Attorneys are held to an objective standard of "reasonably effective assistance" under "prevailing professional norms." 104 S.Ct. at 2064–65. The Court in *Strickland* emphasized that "[j]udicial scrutiny of counsel's performance must be highly deferential," and that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," viewing the case as of the time of counsel's conduct rather than in hindsight, and recognizing counsel's discretion in the shaping of trial strategy. *Id.* at 2065–66. Furthermore, prejudice to the defense must be present for reversal. *Strickland* requires that:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* at 2068.

■ A. We need not review in detail each of petitioner's multifarious ineffective assistance claims deriving from the guilt stage of his trial. The actions of counsel, examined under *Strickland,* are largely attributable to trial strategy, and it is inappropriate for us to second-guess the outcome of such decisions. More importantly, petitioner has altogether failed, in any instance, to satisfy the "prejudice" element by showing a "reasonable probability" that the outcome of the trial would have differed had counsel followed the courses he now recommends.

■ B. According to petitioner, the most egregious failures of trial counsel occurred at the penalty stage, and we thus

---

**14.** During *voir dire,* defense counsel asked Candies whether she could impose the death penalty if "ten people killed a small child," and her responses reflected uncertainty. In the face of

her other answers, however, we attach little weight to her attitude in an exaggerated hypothetical situation.

direct our primary attention to that portion of the trial. The alleged ineffectiveness takes two forms: i) failure to present evidence in mitigation, and ii) failure to object to the jury instructions given by the trial judge. As we have resolved the constitutional validity of the jury instructions on the merits in part II, *supra,* we need not address the latter aspect of petitioner's ineffectiveness claim further.

During the penalty stage of the trial defense counsel introduced only one mitigation witness, Briley's parole officer, whose testimony principally served to establish that Briley had a good employment record after his release from prison in August 1979 and had kept in contact with the parole officer as required. Counsel was not otherwise inactive during this stage of the trial, however. The police officer involved in Briley's prior murder attempt was cross-examined, and it was established that Briley was only sixteen at the time of that offense and that the officer was never actually harmed. Cross-examination of the state records custodian revealed that while Briley had committed several minor offenses while in prison, none involved violence, and Briley had sought to learn a trade and earned substantial time off his sentence for good conduct.

Petitioner now asserts, as he did at the hearing on his ineffectiveness claim in state court, that other mitigation witnesses might have been called to testify, including family members, co-workers, and corrections personnel. With the exception of his mother, however, he has never established how any of those potential witnesses might have testified had they been called. Mrs. Briley testified at the state habeas hearing about her relationship with her son and his behavior at home and after release from prison. The principal advantage that might have been gained by calling her as a witness at the penalty stage would have been jury sympathy. We do not minimize the importance of such sympathy during the sentencing phase, but petitioner's trial counsel did not believe that the mother's testimony would have been helpful in Briley's situation, given that he had been re-

leased from prison less than two months before the Barton murders. Even if this additional mitigating evidence might have been helpful, it certainly does not suggest a "reasonable probability" that the result reached by the jury would have differed had they been exposed to it. Petitioner's trial counsel did not present a strong case in mitigation, but the fault lies with the intrinsic lack of suitable mitigating evidence rather than the neglect of counsel in finding it. We find that petitioner received effective assistance of counsel at the penalty stage of his trial under the *Strickland* standard.

## V

Having examined with care all of petitioner's allegations of error, we are of the opinion that the district court's dismissal of the petition for a writ of habeas corpus must be affirmed. The stay of execution shall be dissolved upon issuance of the mandate. We direct that issuance of the mandate be stayed pending timely application for review by the United States Supreme Court.

AFFIRMED.

## APPENDIX A

THE COURT: Ladies and gentlemen of the jury, the Court will now instruct you as to the punishment aspect of the case. You have convicted the defendant of an offense which may be punishable by death. You must decide whether the defendant shall be sentenced to death or to life imprisonment.

Before the penalty can be fixed at death, the Commonwealth must prove beyond a reasonable doubt at least one of the following two alternatives: One, that, after consideration of his past criminal record, there is a probability that he would commit criminal acts of violence that would constitute a continuing, serious threat to society; or, two, that his conduct in committing the offense was outrageous and wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim beyond the minimum

necessary to accomplish the act of murder. If you find from the evidence that the Commonwealth has proven beyond a reasonable doubt either or the two alternatives, then you shall fix the punishment of the defendant at death; or if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the defendant at life imprisonment. If the Commonwealth has failed to prove either alternative beyond a reasonable doubt, then you shall fix the punishment of the defendant at life imprisonment.

You have, you have really found him guilty of two capital murders. This one instruction will take care of both capital murders. That's what you must find.

Then I give you the forms of your verdict, which read: We, the jury, on the issues joined, having found the defendant guilty of capital murder of Judy Diane Barton, the commission of robbery while armed with a deadly weapon, and having found that, now you will have to scratch out what you do not find. In other words, you will use your pencil or pen and just scratch that out.

One, after consideration of his past criminal record, that there is a probability that he would commit criminal acts of violence that would constitute a continuing, serious threat to society and/or you can find both or one. His conduct in committing the offense is outrageously or wantonly vile, horrible, or inhuman in that, it involved torture, depravity of mind, aggravated battery of the victim beyond the minimum necessary to accomplish the act of murder, and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death; or, we, the jury, on the issues joined, having found the defendant guilty of capital murder of Judy Diane Barton during the commission of robbery while armed with a deadly weapon and having considered all of the evidence in aggravation and mitigation of such offense, fix his punishment at imprisonment for life. In any event, your foreperson will find that verdict.

You will also have another verdict on Harvey Wayne Barton, which is, and won't cross out the same thing: We, the jury, on the issues joined, having found the defendant guilty of capital murder of Harvey Wayne Barton during the commission of robbery while armed with a deadly weapon and having found that, then you must find one of these two things, or both. After consideration of his past criminal record, that there is a probability that he will commit criminal acts of violence that will constitute a continuing, serious threat to society or, and/or his conduct in committing the offense is outrageously or wantonly vile, horrible, or inhuman in that it involved torture, and that means depravity of mind, aggravated battery of the victim beyond a minimum necessary to accomplish the act of murder, and having considered the evidence in mitigation of the offense, unanimously fix his punishment at death; or, we, the jury, on the issues joined, having found the defendant guilty of capital murder of Harvey Wayne Barton during the commission of robbery while armed with a deadly weapon and having considered all the evidence in aggravation and mitigation of such offense, fix his punishment at imprisonment for life. In any event, your foreperson will sign that verdict.