**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Gary CRAIGO, Defendant–
Appellant.**

**No. 90–5351.**

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1991.

Decided Feb. 3, 1992.

George Howard Lancaster, Jr., Asst. Federal Public Defender, Charleston, W.Va., argued, for defendant-appellant.

Sanford Benjamin Bryant, Office of the U.S. Atty., Huntington, W.Va., argued (Michael W. Carey, U.S. Atty., John P. Rowley, III, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER and SPROUSE, Circuit Judges, and WARD, Senior District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

Appellant Robert Gary Craigo was indicted on December 5, 1989 for possessing a firearm after being previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1). On March 7, 1990, after a one day trial, a jury convicted him. The presentence report calculated the base offense level at 9 with a criminal history category of V. The United States objected, arguing that the base offense level should be increased due to Craigo's attempt to obstruct justice by committing perjury at trial. The United States also objected to the criminal history category because they felt that it failed to adequately measure Craigo's past criminal conduct.

On May 21, 1990, Craigo was sentenced. The court found that Craigo committed perjury at trial and increased his offense level to 11. The court further agreed with the government and raised Craigo's criminal history category to VI. Craigo was then sentenced in the middle of the guideline range to 30 months. We affirm the conviction, but vacate the sentence and remand for reconsideration in the light of *United States v. Dunnigan*, 944 F.2d 178 (4th Cir.1991).

## I

Craigo was arrested on February 18, 1989 when two Charleston West Virginia police officers discovered Craigo and his cousin, Dane Powell, in a parked car with cocaine and drug paraphernalia. After being placed under arrest, Craigo volunteered to the officers that "he had a gun in the glove compartment" of the car. The officers searched the glove compartment and located a Smith & Wesson .44 Magnum revolver fully loaded with hollow points. Craigo was advised of his *Miranda* rights at the scene and again at the police station. He then gave a written statement where he admitted that the gun was his, that he had possessed it a couple of weeks and that he had bought it on Summers Street for $50.00. After completing his statement, Craigo additionally informed the officers that he was an escapee from the West Virginia State Corrections Work Release Center. When asked, Craigo agreed that this made him a convicted felon. When next asked if he still wanted to admit ownership of the gun, Craigo replied that he did.

Six months later, in August, two ATF agents interviewed Craigo in jail. They advised him that they were there to investigate his possession of a firearm. Craigo signed a waiver of rights and gave the agents a statement denying ownership of the gun and claiming that it actually belonged to his cousin Dane Powell. He admitted that he possessed the gun on occasions in January and February other than on the night of his arrest, and stated that he and Powell had gone to Virginia to purchase ammunition for it.

The agents then interviewed Powell, who gave a written statement claiming that Craigo owned the gun and had bought it on

Summers Street in January or February of that year, exactly as Craigo had first told the arresting officers.

In late February, 1990, approximately one week before Craigo's trial, representatives of the government met with Powell to discuss his testimony. Powell told them that his August statement was wrong and that he, not Craigo, owned the gun.

At trial, Powell testified that he owned the gun. He denied that he was only claiming to be the owner of the gun because it would not be illegal for him to possess the gun. He testified that he lied to the ATF agents in August because Craigo had told him to say that the gun was Craigo's on the night of the arrest and because he was then angry with Craigo since the arrest jeopardized his own position as administrator of his parents' estate.

Craigo took the stand in his own defense. He admitted to telling the arresting officers that he owned the gun, but claimed he invented the story to protect his cousin Powell from being arrested for possession of a gun he had reason to believe was stolen. He further stated that he knew that a charge of that sort could adversely affect Powell's position as administrator of his parents' estate. He stated that he felt free to tell the ATF agents the truth in August because by then he had found out that the gun was not stolen. He denied that he told the agents that he had possessed the gun on occasions in January and February other than on the night of his arrest.

## II

Craigo raises two issues on appeal. First, whether the court properly charged the jury regarding witness credibility and impeachment by prior inconsistent statements; and, second, whether it was clearly erroneous that the court found Craigo to have obstructed justice by committing perjury at trial, and if so, whether that finding could constitute obstruction of justice so as to result in an increase in his base offense level.

## A

■ Craigo argues that the district court erroneously instructed the jurors that they could only give "limited" credibility to the testimony of a witness whom they found had been impeached. The Court instructed:

Now, the testimony of a witness may be discredited or impeached by showing that he previously made statements which are inconsistent with his statements here in court. The earlier contradictory statements are admissible only to impeach the credibility of the witness and they are not offered to establish the truth of those earlier statements. It is your province to determine the credibility, if any, to be given to the testimony of a witness whom you find to have been impeached. And if a witness has been shown to you to have testified falsely concerning any material or important matter in this case, then you obviously have a right to distrust such witness' testimony in all other particulars and *you may reject all the testimony of that witness or you may give it just such limited credibility as you think it should deserve.* (Emphasis added).

Craigo argues that the instruction made the jurors think that they could only give limited weight to the testimony. Therefore, it did not fairly state the controlling law.

■ This court will not review jury instructions for "technical error." *United States v. Cobb,* 905 F.2d 784, 788 (4th Cir. 1990). Neither is reversal of a conviction required unless there is a "reasonable likelihood" that the jury misconstrued the instruction. *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). The phrase "limited credibility" was but one part of a lengthy charge given the jury. Although we feel the instruction was clearly error, it must be viewed in the light of the totality of the instructions given. *Id.; Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400–01, 38 L.Ed.2d 368 (1973); *Briley v. Bass,* 750 F.2d 1238, 1243 (4th Cir.1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985). In

this regard, it was harmless error. Such a technical error, which did not "prejudice the jury's consideration of the dispositive issue," does not require reversal. *See United States v. Davis*, 739 F.2d 172, 175 (4th Cir.1984). Because the court ultimately told the jury it was free to give whatever weight it wanted to the testimony, it fairly stated the controlling law and did not prejudice Craigo.

### B

 Craigo next argues that his trial testimony could not constitute obstruction of justice. He concedes that, under *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978), a defendant's perjury in the denial of the charge formerly might have been considered when a court was imposing a sentence. However, Craigo argues that under the Sentencing Guidelines the obstruction of justice charge punishes him for his exercise of his constitutional right to testify in any event, and especially because the evidence doesn't support the obstruction of justice charge. Although Craigo contends that his freely admitted inconsistent statements were the only testimony given other than a general denial of ownership, his convoluted explanation of why he lied in the first place was more than a simple denial of guilt. The district court found that Craigo's reason that he was concerned for Powell's position as administrator of his parents' estate was ludicrous and perjurious. Although we are of opinion that the district court's conclusion that Craigo's testimony was ludicrous and perjurious is supported by the evidence and is not clearly erroneous, *United States v. Dunnigan* does not permit a district court in sentencing to enhance a guidelines sentence under Guideline § 3C1.1 for lying testimony by a defendant in denial of the charges against him because that guideline is an intolerable burden on the defendant's right to testify. *Dunnigan*, 944 F.2d at 185.

Accordingly, the conviction in this case is affirmed, but Craigo's sentence is vacated and the case is remanded for re-sentencing in the light of *Dunnigan* and without an enhancement under Sentencing Guideline § 3C1.1 for lying as aforesaid.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.