19 F.3d 19
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James CHILDERS, Paul Childers, Defendants-Appellants.
 Nos. 92-6296, 92-6297.
 United States Court of Appeals, Sixth Circuit.
 March 1, 1994.
 
 Before: KEITH and NORRIS, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Appellants Paul Childers and James Childers were tried and found guilty of violating: (1) 21 U.S.C. Sec. 846, for conspiracy to manufacture, produce and grow, and to possess marijuana with the intent to distribute same (Count I); (2) 21 U.S.C. Sec. 841, for aiding and abetting each other with the manufacture of marijuana (Count II); and (3) 21 U.S.C. Sec. 841, for aiding and abetting each other with possession with intent to distribute marijuana (Count III). Their arrests and subsequent convictions stem from events that occurred on property that was occupied by Paul Childers and owned by James Childers.
 
 
 2
 In September 1991, during the eradication of a patch of marijuana that had been located by air, three Kentucky state police officers followed a path from a marijuana field to a shed. In an effort to identify the owner, the officers went to an adjacent house and obtained permission to search the shed from the occupant of the house, Paul Childers. After finding some planter buckets in the shed, the officers returned to the house and asked Paul Childers if they could look inside the house. Despite Paul Childers' initial reluctance, based on the fact that it was his brother's house, he ultimately acceded to their request after being informed that he, as the occupant, could provide consent for a search.
 
 
 3
 After a brief walk through the house, during which signs of marijuana growing were discovered, the officers requested Paul Childers to sign a written consent form allowing them to do an extensive search of the house. Paul Childers was very reluctant to do this, but after being told that the officers would seek and most likely receive a warrant regardless of his acquiescence, Paul Childers acceded once again and the officers searched the premises, discovering an extensive array of drug growing paraphernalia. Based on the evidence uncovered during this search, Paul and James Childers were arrested and charged with the abovementioned counts.
 
 
 4
 Upon being found guilty of the abovementioned counts, Paul Childers was sentenced to incarceration for sixty-three months and James Childers was sentenced to incarceration for seventy-eight months. Each appellant filed timely notices of appeal pursuant to the jury's verdicts and the judgments entered by the district court. All other relevant facts will be discussed at the appropriate point in this opinion.
 
 
 5
 The district court denied appellants' pre-trial motion to suppress evidence obtained during a search of James Childers' house and premises. The search was challenged as non-consensual, in violation of appellants' Fourth Amendment right to be free from illegal searches and seizures.
 
 
 6
 Searches conducted "outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable--subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One of these exceptions is a search conducted pursuant to consent. Davis v. United States, 328 U.S. 582, 593-594 (1945). For consent to be valid, it must be both authorized, United States v. Matlock, 415 U.S. 164, 170 (1974), and voluntary. Bumper v. North Carolina, 391 U.S. 543, 548 (1968). James Childers did not contest Paul Childers' authority to consent to a search of the former's premises. The issue is whether Paul Childers' consent was involuntary.
 
 
 7
 Whether consent is voluntary or the product of duress or coercion is to be determined by the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1972). The government has the burden of proving that consent was freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548 (1968).
 
 
 8
 Appellants contend that the prosecution failed to prove by a preponderance of the evidence that under the totality of the circumstances Paul Childers voluntarily consented to a search of James Childers' shed and house. They insist that consent to search the premises was obtained through coercion, and that Paul Childers' actions constituted nothing more than acquiescence to authority. Further, Paul Childers asserts that he was never aware of his right to refuse to consent, one of the factors to be considered under the test laid down by Schneckloth, 412 U.S. at 248-49.
 
 
 9
 Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent. Schneckloth, 412 U.S. at 248-49. According to the Schneckloth Court, such a factor would often be impossible to prove.
 
 
 10
 Any defendant who was the subject of a search authorized solely by his consent could effectively frustrate the introduction into evidence of the fruits of that search by simply failing to testify that he in fact knew he could refuse to consent. And the near impossibility of meeting this prosecutorial burden suggests why this Court has never accepted any such litmus-paper test of voluntariness.
 
 
 11
 Id. at 230.
 
 
 12
 Schneckloth mandates that we inquire into all the facts and circumstances surrounding the incident in question in order to determine whether Paul Childers' consent was voluntary. Taking into consideration the record before us, and according due deference to the findings of fact by the trial court, we find no clear error in the trial court's findings that the consent provided by Paul Childers was voluntary and the resulting search was constitutional.
 
 
 13
 Appellants further argue that Officer Fritz coerced Paul Childers into consenting by informing him that if he did not sign the consent form, the officers would just wait until a search warrant was obtained. Such advice, as long as it is firmly grounded in fact, consistently has been held not coercive under the Fourth Amendment. United States v. Duran, 957 F.2d 499, 502 (7th Cir.1992); United States v. Calvente, 722 F.2d 1019 (2d Cir.) 1023, cert. denied, 471 U.S. 1021 (1983); United States v. Faruolo, 506 F.2d 490, 495 (2d Cir.1974). Considering the substantial evidence already garnered by the time Officer Fritz requested consent to search the house, there is no doubt that probable cause existed and a search warrant would have been forthcoming. Appellant's contention in this regard is therefore meritless.
 
 
 14
 United States Sentencing Guideline Sec. 3C1.1 states in full: "If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the [defendant's] offense level by 2 levels." The commentary to Sec. 3C1.1 explicitly provides that the phrase "impede or obstruct the administration of justice" includes perjury. In pertinent part, the commentary states:
 
 
 15
 "This section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges, in respect to the instant offense.
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 "1. The following conduct, while not exclusive, may provide a basis for applying this adjustment:
 
 
 19
 * * *
 
 
 20
 * * *
 
 
 21
 "(c) testifying untruthfully or suborning untruthful testimony concerning a material fact, ... during a preliminary or grand jury proceeding, trial, sentencing proceeding, or any other judicial proceeding."
 
 
 22
 U.S.S.G. Sec. 3C1.1, comment, n. 1(c).
 
 
 23
 James Childers argues that he does not deserve a two point "obstruction of justice" sentence enhancement, pursuant to the above guideline section, because: (1) United States v. Craigo, 956 F.2d 65 (4th Cir.1992), rev'd, United States v. Dunnigan, 113 S.Ct. 1111 (1993), holds that this enhancement is an unconstitutional obstruction of Childers' right to testify; and (2) despite the fact that the district court judge held that Childers had been untruthful, the judge expressly stated that he was not holding that Childers had committed perjury.
 
 
 24
 The recently decided case of U.S. v. Dunnigan, 113 S.Ct. 1111 (1993), controls this issue. In Dunnigan, the Supreme Court held that untruthful testimony can be the basis for a U.S.S.G. Sec. 3C1.1 obstruction of justice sentence enhancement. This decision induced the Fourth Circuit in U.S. v. Craigo, 993 F.2d 1086, 1087 (4th Cir.1993), to reverse the section of U.S. v. Craigo, 956 F.2d 65 (4th Cir.1992), relied upon by Childers. The Dunnigan court clearly held that an enhanced sentence for the willful presentation of false testimony does not undermine the right to testify. 113 S.Ct. at 1117.
 
 
 25
 According to Dunnigan: "[I]f a defendant objects to a sentence enhancement resulting from [ ] trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out."[1] As Dunnigan is the controlling precedent in this area, we can affirm as long as the trial judge in our case made specific findings with regard to the perjury elements defined in 18 U.S.C. Sec. 1621.
 
 
 26
 Childers argues that such a finding is precluded because the district court judge expressly stated: "Now, I'm not going to get up here and say [Childers] committed perjury. That would be for a jury to decide." (Sent.Trans. at 15-16.) We disagree. A formal determination of perjury is not necessary as long as the district court "makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." Dunnigan, at 113 S.Ct. 1117. To satisfy this test, thereby justifying the two-point enhancement, the district court must have specifically found that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." Dunnigan, 113 S.Ct. at 1116, quoting 18 U.S.C. Sec. 1621(1) (citations omitted).
 
 
 27
 With regard to the testimony of James Childers, the district court found that:
 
 
 28
 James David Childers, at the trial of this case testified untruthfully. He indicated he didn't know there was anything going on there with regard to growing pot plants, he talked about having Paul on the property for the purpose of doing concrete work as he remodeled the house. He testified that he didn't buy any of the lights, the bulbs, the cover, the ballasts; the last time he was there, that the exhaust fans were not present, that the thermometers were not present, that the cloning concentrate was not present; that he ordered--I believe he testified he ordered out of Worms Way to get fertilizer which is most unusual. I just did not find the testimony of Mr. Childers to be truthful.
 
 
 29
 We are satisfied that the court's findings with regard to James Childers' untruthfulness are sufficient to satisfy the test laid down in Dunnigan, as prescribed by 18 U.S.C. Sec. 1621, and that such findings justify imposing the two-point enhancement pursuant to U.S.S.G. Sec. 3C1.1.
 
 
 30
 Appellants next claim that the district court erred in including 109 plants in its total calculation of confiscated drugs found on James Childers' premises. Appellant's contend that these 109 plants were only seedlings and as they lacked an identifiable root structure, they did not fall within the accepted definition of "plant" provided by the court in U.S. v. Edge, 989 F.2d 871.
 
 
 31
 The government concedes that the evidence was insufficient, under the test enunciated in Edge, to prove that the 109 seedlings were "plants." However, Appellants were also sentenced for possession of 201 full-fledged marijuana plants. This evidence was uncontroverted and those plants fully satisfied the Edge test. Because the brothers were sentenced for a quantity of marijuana between 100-400 kilograms (according to 21 U.S.C. Sec. 841(b)(1)(A)(vii) and U.S.S.G. Sec. 2D1.1--one plant equals 1 kilogram) it is irrelevant, for sentencing purposes, that the 109 plants were also included in the total calculation. Remand for resentencing is thus unnecessary and the district court's sentence stands.
 
 
 32
 Appellants also claim that: (1) the evidence was insufficient to support their conviction, (2) the district court erred by inadequately attributing a specific quantity of drugs to each defendant, and (3) U.S.S.G. Sec. 2D1.1 violates appellants' right to equal protection of the laws because of the arbitrary and irrational ratio equating drug quantity with appropriate punishment.
 
 
 33
 The court has thoroughly reviewed both the facts and law that support the Appellants' contentions, and finds no merit in any of these three claims.
 
 
 34
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The court stated that this definition can be found in 18 U.S.C. Sec. 1621