George H. CLEAVER,
Petitioner–Appellee,

v.

Donald E. BORDENKIRCHER, Superintendent, Kentucky State Penitentiary,
Respondent–Appellant.

No. 79–3514.

United States Court of Appeals,
Sixth Circuit.

Argued April 4, 1980.

Decided Oct. 31, 1980.

Mark F. Armstrong, Gerald Henry, Asst. Attys. Gen., Frankfort, Ky., for respondent–appellant.

William M. Radigan, Asst. Public Defender, J. Vincent Aprile, II, Asst. Public Advocate, Frankfort, Ky., for petitioner–appellee.

Before EDWARDS, Chief Judge, and ENGEL and JONES, Circuit Judges.

EDWARDS, Chief Judge.

Respondent warden appeals from an order of the United States District Court for the Eastern District of Kentucky granting appellee Cleaver's petition for a writ of habeas corpus.

The facts show that Cleaver had been convicted in a Kentucky State Court on an indictment charging murder and robbery in the first degree. He was sentenced to life imprisonment. His counsel at trial was a court–appointed public defender who filed the appropriate notice of appeal in timely fashion.

After repeated extensions to allow for the filing of the record on appeal, the public defender was faced with a 40–day limitation on the filing of his appellate brief. Detailing the work in other cases assigned to him which he had to accomplish during the time span involved, Cleaver's counsel sought a 30–day extension which the Supreme Court granted "as a final extension."

At the end of that 30 days, and on the date when the appellate brief was required to be filed, the same counsel filed a motion requesting an additional 30–day extension, giving as reasons the following:

During the next ten (10) days, the undersigned counsel has seven (7) appellate briefs which are scheduled to be filed with this Court and the Court of Appeals. In an attempt to complete as many of these pleadings as possible, the undersigned counsel has been forced to devote a majority of his available time to completing other cases to the detriment of appellant's appeal. The requested additional time is required to allow the undersigned counsel to devote the time to appellant's case which is necessarily required by its complexity and length.

The public defender's motion continued:

Under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967), appointed counsel's 'role as advocate requires that he support his client's appeal to the best of his ability.' Under our adversary system, it has become a well–established principle that there is no substitute for counsel who acts as an advocate and who makes the best arguments he can on the facts and the law. *High v. Rhay*, 519 F.2d 109, 113 (9th Cir. 1975), citing *Anders v. California, supra.* Accordingly, when an appointed counsel in a criminal appeal because of his total volume of work is unable to devote sufficient time to complete a professionally competent appellate brief within the allotted time period, his only recourse is to seek an extension of time from the appellate court. If the appointed counsel declines to request an extension and instead files a perfunctory brief, the indigent appellant is denied the effective assistance of counsel on appeal, a right which he is guaranteed by the Sixth Amendment.

The Kentucky Court of Appeals denied this motion for an additional extension. It also dismissed the appeal. When counsel went back to the trial court and sought and received an order reinstating the appeal, the Supreme Court held a hearing and decided that the trial court had no authority to readjudicate a procedural issue already decided by the highest court of the state. It again dismissed the appeal.

While there is no doubt as to the validity of this last ruling, the net result of the entire procedure is that the record shows, without dispute, that appellee Cleaver was denied counsel to process his appeal, while other persons in Kentucky convicted of crimes who had the financial means to do so would have been able to perfect their appeals and receive adjudication of them by the highest court in the state.

The District Judge who issued this writ did so on the basis of his view that appellant had been denied the effective assistance of counsel, relying in part upon *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and *Anders v. California*, 386 U.S. 738, 739, 87 S.Ct. 1396, 1397, 18 L.Ed.2d 493 (1967), and distinguishing *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974).

■ Petitioner Cleaver, of course, has no federal constitutional right to appeal his state court conviction. *McKane v. Durston*, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894). He has, however, a state constitutional right of appeal (Kentucky Constitution § 110(2)(b)[1]). This right cannot be regarded as having been vindicated by the appointment of a public defender who is so overloaded with work as to be unable to service his appeal as of right. Deprivation of counsel on this ground cannot, of course, be established merely by the public defender's assertion. Here, however, the facts alleged by the public defender concerning overload have not been disputed either in the proceedings before the State's highest court or in the briefing and argument in this federal habeas proceeding.

[1] "Appeals from a judgment of the Circuit Court imposing a sentence of death or life imprisonment or imprisonment for twenty years or more shall be taken directly to the Supreme Court. In all other cases, criminal and civil, the Supreme Court shall exercise appellate jurisdiction as provided by its rules." Kentucky Constitution § 110(2)(b).

We recognize that the Attorney General does claim that "there is no proof that the state withheld adequate funds or staff to process indigent appeals." The record in this case is, however, proof to the contrary of this assertion and the same may be said of the record currently before us in *Brown v. Smith* (6th Cir. 1980) (No. 79–3589), wherein a similar habeas writ has been granted on similar facts by another United States District Judge.

■ The Attorney General also asserts, "The proper procedure would have been to request the assignment of additional personnel to handle the increased caseload." We do not, however, think that proving where the budget–making processes or personnel assignment procedures of the Commonwealth of Kentucky broke down is an appropriate burden to place upon an indigent habeas petitioner or his counsel. The state–appointed counsel for this defendant has stated that he could not perform his responsibility to perfect appellant's appeal because of an excessive workload. This assertion, if untrue, could have been contested, but was not. It stands undenied on this record. An affluent defendant who sought to retain an overburdened lawyer could and would have hired another. This petitioner was denied equal protection of the law by being denied the right to appeal which Kentucky granted to others by its Constitution.

On this record we must conclude (and do) that the reason the public defender was delinquent in observing the time limitations facing him in processing this appeal was an overload of other appellate work before the Supreme Court of Kentucky, and that this overload rendered observance of the time limitation in this case impossible.

We recognize Kentucky's right to decide, in the first instance, any disputed issue of fact concerning representations of work overload by counsel supplied by the State. If inaccurate claims are tendered, Kentucky can take measures to discipline any lawyer found to be untruthful in such representations, or willfully or negligently delinquent. We believe, however, that the facts upon which we rely in this case are undisputed. As a result of them petitioner has been deprived of the right to appeal his conviction solely because his indigency status made the overburdened public defender his only source of legal representation. In *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), the Supreme Court said:

> The cases encompassed a variety of circumstances but all had a common theme. * * *
>
> [They] stand for the proposition that a State cannot arbitrarily cut off appeal rights for indigents while leaving open avenues of appeal for more affluent persons. *Ross v. Moffitt, supra* at 606–07, 94 S.Ct. at 2441–42.

In *Ross v. Moffitt, supra,* the opinion of the Court also observed that the entitlement to appellate counsel (where the state grants an absolute right to appeal) implicates both the equal protection clause and the due process clause. *Id.* at 608–09, 94 S.Ct. at 2442–43.[2]

■ In the District Court in our present case, the District Judge relied primarily upon a due process analysis based on denial of counsel. In the event the largely equal protection rationale employed above is found inadequate to sustain this writ, alternatively we endorse the opinion authored by the District Judge and dated May 29, 1979.

---

**2.** The precise rationale for the *Griffin* [351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891] and *Douglas* lines of cases has never been explicitly stated, some support being derived from the Equal Protection Clause of the Fourteenth Amendment, and some from the Due Process Clause of that Amendment. Neither Clause by itself provides an entirely satisfactory basis for the result reached, each depending on a different inquiry which emphasizes different factors. "Due process" emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated. "Equal protection," on the other hand, emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable. We will address these issues separately in the succeeding sections. *Ross v. Moffitt, supra* at 608–09, 94 S.Ct. at 2442–43. (footnote omitted).

The judgment of the District Court is affirmed.