## Norfolk

DERICK LYNN PETERSON

v.

GARY BASS, WARDEN

No. 0082-84

Decided May 6, 1986

Affirmed En Banc October 16, 1986

COUNSEL

J. Gray Lawrence, Jr. (Howell, Daugherty, Brown & Lawrence, on brief), for appellant.

Richard B. Smith (Gerald L. Baliles, Attorney General of Virginia, on brief), for appellee.

OPINION

**KEENAN, J.**—Derick L. Peterson appeals the denial of his petition for a writ of habeas corpus. On October 11, 1984, the Circuit Court for the City of Hampton dismissed Peterson's petition which challenged his detention for convictions of capital murder, robbery, and use of a firearm in the commission of a felony. Several assignments of error have been raised. However, we are confronted initially with a question of jurisdiction. One of the convictions underlying appellant's habeas petition is for capital murder. We conclude from a review of our jurisdictional statutes, and the Supreme Court's order in *Titcomb* v. *Wyant*, 228 Va. lvii, 323 S.E.2d 800 (1984), that this court is without jurisdiction to hear habeas corpus appeals arising from convictions where the death penalty has been imposed. Because the notice of appeal was filed prior to July 1, 1985, we do possess jurisdiction to resolve issues relating to the robbery and firearms convictions.[1] Finding no error, we affirm the trial court's dismissal of Peterson's claims relating to his convictions for robbery and use of a firearm in the commission of a felony.

I.

In *Titcomb*, the Supreme Court considered a direct habeas appeal from a circuit court arising from rape and sodomy convictions in which sentences of ten and five years respectively were imposed. The Court ruled that "exclusive jurisdiction over this appeal lies with the Court of Appeals pursuant to Code §§ 17-116.04 and 17-116.05:4."[2] 228 Va. at lvii, 323 S.E.2d at 800. In the present case, the notice of appeal was filed in the Supreme

---

[1] *See infra* footnote 4.

[2] § 17-116.04 *Original jurisdiction in matters of contempt and injunctions, writs of mandamus, prohibition and habeas corpus.* The Court of Appeals shall have authority to punish for contempt. A judge of the Court of Appeals shall exercise initially the authority concerning injunctions vested in a justice of the Supreme Court by § 8.01-626 in any case over which the court would have appellate jurisdiction as provided in §§ 17-116.05 and 17-116.05:1. In addition, in such cases over which the court would have appellate jurisdiction, the court shall have original jurisdiction to issue writs of mandamus, prohibition and habeas corpus.

Court prior to *Titcomb*. Three days after the *Titcomb* order, the Supreme Court entered an order transferring this case to the Court of Appeals.[3]

The Attorney General filed a motion requesting the Supreme Court to reconsider its order of transfer. In his motion, the Attorney General argued that the General Assembly did *not* intend to grant appellate jurisdiction over habeas cases to the Court of Appeals. This motion was denied, without opinion, by the Supreme Court. The Attorney General, however, did not seek to distinguish *Titcomb* from the present case on the ground that, unlike *Titcomb*, the petitioner was given the death penalty. As the following discussion demonstrates, this difference is significant, and since it was not presented to the Supreme Court, we consider it for the first time here.

In *Titcomb*, the Supreme Court cited Code § 17-116.04 in support of its ruling that the Court of Appeals had appellate jurisdiction over habeas corpus determinations.[4] Code § 17-116.04 provides: "[i]n such cases over which the court would have appellate jurisdiction, the court shall have original jurisdiction to issue writs of mandamus, prohibition and habeas corpus." While neither this provision nor any other directly defines the scope of our *appellate* jurisdiction in habeas cases, it does evince a legislative intent to

§ 17-116.05:4 *Transitional provision.* A. In any case within the appellate jurisdiction of the Court of Appeals in which the judgment or other order appealed from is entered by the circuit court on or after October 1, 1984, or by the Industrial Commission on or after November 1, 1984, appeal shall be only to the *Court of Appeals.* All filings, proceedings and actions shall be in accordance with the Rules of Court promulgated for the Court of Appeals. The Clerk of the Supreme Court is authorized to act as Clerk of the Court of Appeals on all matters appealed to the Court of Appeals on or before January 1, 1985. Until the judges of the Court of Appeals have qualified, any justice of the Supreme Court is authorized to exercise all powers that would be required of a judge of the Court of Appeals prior to a hearing upon any case appealed to the Court of Appeals before January 1, 1985.

B. All cases within the original jurisdiction of the Court of Appeals under § 17-116.04 shall continue to be within the jurisdiction of the Supreme Court until January 1, 1985.

[3] The Supreme Court order stated: "It appearing to the Court that the record in this case was filed in the Supreme Court rather than the Court of Appeals, it is ordered that the case be transferred to the Court of Appeals." We believe that this order transferred all issues, including jurisdiction, to this court for our determination.

[4] Although the General Assembly has since altered the result of *Titcomb* by specifying in Code § 17-116.05:1(B) that exclusive appellate jurisdiction in habeas cases rests with the Supreme Court, the notice of appeal in this case was filed prior to the effective date of that amendment. We are, therefore, governed by the law as it existed at the time.

vest limited habeas jurisdiction in the Court of Appeals. This view of Code § 17-116.04 is confirmed by the Supreme Court's ruling in *Titcomb*. Since its inception, however, the Court of Appeals has not possessed subject matter jurisdiction over criminal cases where a sentence of death has been imposed.[5] We believe that it would be inconsistent with the legislative design of our jurisdiction to conclude that we lack jurisdiction to hear direct appeals from the circuit courts in cases where a sentence of death has been imposed, but that we do possess subject matter jurisdiction to hear appeals from the circuit courts in cases involving habeas corpus attacks on convictions imposing the death penalty. For this reason, we hold that our habeas corpus jurisdiction, whether appellate or original, must be defined with reference to the "cases over which" we have jurisdiction on direct appeal. It is significant, in this regard, that *Titcomb* did not involve the death penalty. As previously noted, the underlying convictions in *Titcomb* were for rape and sodomy, crimes over which this Court has jurisdiction on direct appeal. For these reasons, we conclude that this Court lacks jurisdiction to hear habeas appeals from the circuit courts in cases where the death penalty has been imposed.

## II.

We turn now to examine Peterson's claims which do not attack his capital murder conviction. Peterson argues that his convictions and punishments for robbery and use of a firearm in the commission of a felony violate the double jeopardy clause of the Fifth Amendment to the United States Constitution.[6] He states that in order for him to have been convicted of capital murder pursuant to Code § 18.2-31(d), the Commonwealth had to prove "[t]he willful, deliberate and premeditated killing of any person in the commission of a robbery while armed with a deadly weapon." He contends that robbery and use of a firearm in its commission are elements of the form of capital murder of which he was convicted,

---

[5] The original jurisdiction statues of the Court of Appeals conferred appellate jurisdiction over "[a]ny final conviction of a crime except where a sentence of death has been imposed." Code § 17-116.05(1) (amended 1984). This limitation on our appellate jurisdiction has been carried forward in subsequent amendments. *See* Code § 17-116.05:1(A).

[6] Peterson was found guilty of the "willful, deliberate and premeditated killing of any person in the commission of robbery while armed with a deadly weapon." Code § 18-2-31(d). He was also found guilty of robbery, Code § 18.2-58, and use or display of a firearm in committing robbery. Code § 18.2-53.1. All offenses arose out of the same incident.

and as such, constitute the "same offense." Thus, Peterson claims that his rights under the double jeopardy clause were violated when he also was convicted and punished for the robbery and fire-arm charges.

We find that Peterson is procedurally barred from raising this issue because he did not raise it at trial or on direct appeal. *Slayton* v. *Parrigan*, 215 Va. 27, 30, 205 S.E.2d 680, 682, *cert. denied*, 419 U.S. 1108 (1974); *see also Coppola* v. *Warden*, 222 Va. 369, 373, 282 S.E.2d 10, 12, *cert. denied*, 455 U.S. 927 (1981).

Peterson next asserts that his counsel was ineffective for failing to attack his robbery and use of a firearm convictions and punishments on the ground of double jeopardy. In order to prevail on this claim, Peterson must show that trial counsel's performance was deficient and that such deficiency prejudiced the defense. *Strickland* v. *Washington*, 466 U.S. 668, 692 (1984). We find that Peterson has made neither showing here.

In *North Carolina* v. *Pearce*, 395 U.S. 711 (1969), the Supreme Court held that the double jeopardy clause applies in three distinct situations: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Id.* at 717. Peterson argues that he received multiple punishments for the same offense. Since all of the convictions arose from a single trial, we are guided by the rule set forth in *Brown* v. *Ohio*, 432 U.S. 161 (1977): "Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *Id.* at 165.

In *Blockburger* v. *United States*, 284 U.S. 299 (1932), the Supreme Court defined when two offenses are the "same:" "The applicable rule is that where the same act or transaction consti-tutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Id.* at 304. Applying the principle of *Brown*, in *Turner* v. *Commonwealth*, 221 Va. 513, 530, 273 S.E.2d 36, 47 (1980),

*cert. denied*, 451 U.S. 1011 (1981), the Virginia Supreme Court held that even if two offenses are the "same" within the meaning of *Blockburger*, there is no double jeopardy violation when multiple convictions and punishments are obtained in a single trial if the General Assembly has "clearly indicated its intent to impose multiple punishments."

■ This principle was again affirmed in *Missouri* v. *Hunter*, 459 U.S. 359 (1983), where the Supreme Court reviewed convictions of armed robbery and armed criminal action obtained in a single trial. There the Court stated: "Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end . . . and the trial court or jury may impose cumulative punishment under such statutes in a single trial."[7]

Applying this analysis in *Fitzgerald* v. *Commonwealth*, 223 Va. 615, 292 S.E.2d 798 (1982), the Virginia Supreme Court held that the General Assembly clearly intended to authorize separate and cumulative punishments for capital murder and the underlying felonies of robbery and rape when such convictions were obtained in a single trial. The Court stated that "[t]he overriding purpose of the murder statutes being gradation, we can divine no legislative intent to eliminate punishment for other offenses included in the murder statutes solely for the purpose of categorizing the murder. . . . In the face of the current statutory scheme and its legislative history, we cannot say that the legislature intended any elimination of underlying sentencing authority for rape and robbery when it modified the murder statutes in 1975, or on any prior occasion." *Id.* at 636-37, 292 S.E.2d at 810.

We find that *Fitzgerald* controls the double jeopardy issue raised by Peterson, and that the convictions and imposition of multiple punishments for capital murder, robbery and use of a firearm in the commission of a felony did not violate his rights under the double jeopardy clause of the Fifth Amendment.[8] Since

---

[7] The double jeopardy clause would be violated if the Commonwealth sought to obtain a conviction for robbery in a separate trial *following* a conviction for murder during the perpetration of robbery. *Payne* v. *Virginia*, 468 U.S. 1062 (1984) (per curiam).

[8] It is significant that, with respect to the firearm conviction, the legislative intent is clear. Code § 18.2-53.1 provides that violation of this section "shall constitute a separate

those convictions and punishments did not violate the double jeopardy clause, his counsel was not ineffective for failing to raise the issue. *See United States* v. *Ortiz Oliveras*, 717 F.2d 1, 4 (1st Cir. 1983); *United States* v. *Winston*, 613 F.2d 221, 223 (9th Cir. 1980). For the same reason, Peterson could not have suffered any prejudice from this omission.

In summary, based upon our finding that this court lacks subject matter jurisdiction over the capital murder portion of Peterson's habeas corpus petition, those claims are dismissed. Because Peterson's convictions for capital murder, robbery and use of a firearm in the commission of a felony do not violate the double jeopardy clause, and his counsel was not ineffective for failing to raise this groundless claim, we affirm that portion of the trial court's ruling dismissing these claims.[9]

> *Affirmed in part,*
> *dismissed in part.*

Baker, J., concurred.

Barrow, J., dissenting.

I agree that this court is without jurisdiction to hear habeas corpus appeals arising from convictions where the death penalty has been imposed. However, I would not dismiss this proceeding but would direct the clerk of this court to return the record to the Supreme Court.

Peterson has taken all steps necessary to entitle him to have his petition for appeal considered on its merits by the Supreme Court. He filed a timely notice of appeal to the Supreme Court and subsequently filed a timely petition for appeal.

The Supreme Court on its own volition transferred this matter to this court. This court treated it as an appeal of right, received

---

and distinct felony," and that punishment "shall be separate and apart from, and shall be made to run consecutively with, any punishment received for the commission of the primary felony."

[9] While we are sympathetic to the result suggested by the dissent, we find no authority permitting the transfer of Peterson's petition from this Court to the Supreme Court. Code § 17-116.06(A) permits this Court to file a motion with the Supreme Court requesting that it certify a case for review, but only *before it has been determined* by this Court. Once a case has been determined by this Court, we are without authority to request that it be excepted from the usual procedural requirements of appeal.

briefs and oral argument on the merits of the appeal and now dismisses it for lack of jurisdiction.

This dismissal prevents Peterson's petition for appeal from being considered on its merits. A new notice of appeal would not be timely and an appeal of this decision raises only the issue of jurisdiction, not the underlying question of whether he should be granted an appeal from the judgment of the trial court.

Dismissing Peterson's petition for appeal raises constitutional questions. Although Virginia is not "required to establish avenues of appellate review . . . once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *Rinadli* v. *Yeager*, 384 U.S. 305, 310, (1966). Even an otherwise appropriate judicial ruling cannot be used to thwart a criminal defendant's equal opportunity for appellate review. *See Draper* v. *Washington*, 372 U.S. 487, 498 (1963); *Cleaver* v. *Bordenkircher*, 634 F.2d 1010, 1012 (6th Cir. 1980); *Ruetz* v. *Lash*, 500 F.2d 1225, 1230 (7th Cir. 1974).

Eventually the merits of Peterson's petition for appeal may be heard. Our Supreme Court may allow, or a federal court may require, a delayed appeal, *see Williams* v. *Coiner*, 392 F.2d 210, 213 (4th Cir. 1968), or another petition may be filed. *See* Code § 17-97. Resort to these alternatives however, will unnecessarily delay resolution of this capital case.

The problems created by dismissing this appeal can be avoided by directing the clerk of this court to return the record in this matter to the Supreme Court. This would permit the Supreme Court to review Peterson's petition for appeal and would also permit review of this jurisdictional decision.