## Fairfax

CHARLES SYLVESTER STAMPER

v.

SHERMAN L. TOWNLEY,
ACTING WARDEN, VIRGINIA
STATE PENITENTIARY

No. 0059-85

Decided April 7, 1987

COUNSEL

Dennis W. Dohnal (Bremner, Baber and Janus, on briefs), for appellant.

Thomas D. Bagwell, Assistant Attorney General (Gerald L. Baliles, Attorney General, on brief), for appellee.

OPINION

**BAKER, J.** — Charles Sylvester Stamper (appellant) appeals from a judgment of the Circuit Court of the County of Henrico (habeas court) denying his petition for a writ of habeas corpus. On November 17, 1978, appellant was convicted by a jury of three counts of capital murder, one count of robbery, and three counts of use of a firearm during the commission of a felony. In

accordance with the jury verdicts he was sentenced to death on each of the capital murder charges, life in the penitentiary on the robbery charge, and one year each on the weapons use charges.

Appellant's appeal of the convictions to the Supreme Court of Virginia was unsuccessful, *see Stamper v. Commonwealth*, 220 Va. 260, 257 S.E.2d 808 (1979), and his petition for a writ of certiorari was denied by the Supreme Court of the United States. *See Stamper v. Commonwealth*, 445 U.S. 972 (1980).

On July 3, 1980, appellant filed a petition for habeas corpus in the habeas court asserting as his only ground for relief that the death penalty constitutes cruel and unusual punishment in violation of the Fifth, Eighth, Ninth and Fourteenth Amendments to the Constitution of the United States. The petition was denied by the habeas court on December 4, 1980, and that judgment was affirmed by the Supreme Court of Virginia on November 20, 1981. Appellant then sought relief in the United States District Court (district court), initially alleging only that the death penalty was unconstitutional. The district court appointed new counsel to represent appellant in the federal system and claims of ineffective assistance of counsel were added to appellant's allegations. The petition was denied by the district court on its merits on February 12, 1982. *See Stamper v. Baskerville*, 531 F. Supp. 1122 (E.D.Va. 1982).

On October 4, 1982, the United States Court of Appeals for the Fourth Circuit remanded the case to the district court with direction that the petition be dismissed on the ground that appellant had not exhausted his state remedies as to his claim of ineffective assistance of counsel. The Commonwealth's petition for a writ of certiorari was denied by the United States Supreme Court on February 22, 1983. *See Baskerville v. Stamper*, 459 U.S. 1225 (1983). On remand to the district court, the Commonwealth waived its right to claim failure to exhaust state remedies and the district court accepted the waiver on March 22, 1983. *See Stamper v. Baskerville*, 558 F. Supp. 100 (E.D.Va. 1983). Appellant appealed the waiver ruling and the United States Court of Appeals vacated the waiver judgment, remanding the matter to the district court for dismissal. *See Stamper v. Baskerville*, 724 F.2d 1106 (4th Cir. 1984). On February 6, 1984, an order dismissing the petition for a writ of habeas corpus was entered by the district court.

A new petition for habeas corpus upon which the present appeal is based was filed in the habeas court on July 10, 1984, and several allegations not made in the first petition were added. The Commonwealth's motion to dismiss the new petition was denied and a plenary hearing was ordered.

The new petition asserts that appellant at his trial on the several indictments was denied effective assistance of counsel in that:

1. Trial counsel failed to adequately *voir dire* the venire on the issue of pre-trial publicity, their prior knowledge of the case, and on the issue of the imposition of the death sentence;

2. trial counsel failed to request an adequate *voir dire* of certain jurors who indicated that during the trial they had visited the scene of the crime and heard publicity about the case; and

3. trial counsel concurred in a jury instruction which precluded a possible theory of defense and which suggested an improper statement of law.

The plenary hearing was held in the habeas court on September 6, 1984, and an order denying relief was entered on December 28, 1984. Appellant filed his notice of appeal on January 15, 1985.

## I. *JURISDICTION*

Initially, we are confronted with a jurisdiction question. Three of the convictions underlying appellant's habeas petition are for capital murder for which death penalties were imposed. "[T]his court is without jurisdiction to hear habeas corpus appeals arising from convictions where the death penalty has been imposed." *Peterson v. Bass*, 2 Va. App. 314, 316, 343 S.E.2d 475, 477 (1986).

Prior to July 1, 1985, however, we were authorized to hear habeas appeals relative to the robbery and weapons use convictions. *Id.* at 317-18, 343 S.E.2d at 477-78. Finding no error, we affirm.

## II. *STANDARDS FOR EFFECTIVENESS*

While appellant separates the issues into four parts, the ultimate question is whether trial counsel rendered ineffective assistance which was prejudicial to the defense. The basic question is whether the defendant had a fair trial. *Strickland v. Washington,* 466 U.S. 668, 689 (1984). In this regard, we note that the defendant is entitled to a fair trial, not a perfect one. *Oliver v. Commonwealth,* 151 Va. 533, 541, 145 S.E. 307, 309 (1928). "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Strickland,* 466 U.S. at 685. In such a proceeding, a person accused of a crime has the right to have counsel appointed if he cannot retain one. *Id.* And the right to counsel is the right to effective assistance of counsel. *Id.* at 686. The defendant can be deprived of the right to effective assistance by counsel's failure to render adequate legal assistance. *Id.*

▆▆▆ "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687; *see also Correll v. Commonwealth,* 232 Va. 454, 470, 352 S.E.2d 352, 361, *cert. denied,* 107 S.Ct. 3219 (1987).

 There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the the defense in order to constitute ineffective assistance under the Constitution.

*Id.* at 691-92 (citations omitted).

(4-5) The standard required for attorney performance is that of reasonably effective assistance, and "when a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (citations omitted).

Having reviewed *Strickland's* general standards for judging ineffectiveness of trial counsel, we now examine defense counsel's actions at trial, together with their responses made in the habeas proceedings, to determine whether those standards were met in the defense of the robbery and use of weapons charges over which we had jurisdiction when this appeal was presented to us. To properly evaluate counsel's performance we must consider the salient facts disclosed by the trial record. These facts, shown in the trial transcript and outlined in *Stamper v. Commonwealth,* 220 Va. 260, 264-67, 257 S.E.2d 808, 812-14 (1979), *cert. denied,* 445 U.S. 972 (1980), disclose that during the course of a robbery in which guns were used, two men and a woman were brutally murdered. One victim died from gunshot wounds from bullets which traversed his body in a downward route indicative of execution while in a kneeling position. Powder burns on his body disclosed the weapon was fired within inches of the point at which the bullet entered. The victim's skull was fractured by a piece of angle iron found near the body. Bloodstains on the angle iron matched the blood of the victim. Bone from the fractured skull was driven downward "a half inch or so" toward the brain. Cutting marks which appeared to have been made by a sharp knife blade were observed in the victim's throat area. All wounds and death were recently inflicted.

The second man's death was caused by a gunshot wound to the head. The bullet, fired inches away from the skull, traveled slightly downward, entered his brain and lodged in his skull. Additionally, there was a bruise on the side of his head and a laceration on his forehead. All injuries and death were recently inflicted.

The death of the woman resulted from two bullets which entered her head above the right ear and lodged within her skull. She was found in a slumped over sitting position.

While the evidence of guilt was circumstantial, it was substantial.

The defense at trial of the seven charges was that appellant was not the criminal agent, did not participate in the commission of the crimes and was not on the premises at the time the offenses occurred. The only witness available to defense counsel to prove

the alibi was appellant's wife.

### III. *THE VOIR DIRE*

A. Individual *Voir Dire*

Appellant asserts that as a matter of law trial counsel were ineffective because they did not elect to individually *voir dire* prospective jurors. Individual *voir dire* is not required. *See Cape v. Francis*, 558 F. Supp. 1207, 1221 (M.D.Ga. 1983), *aff'd.*, 741 F.2d 1287 (11th Cir. 1984), *cert. denied*, 106 S. Ct. 281 (1985). In addition, at the time of the trial on the indictments, there was no right to counsel conducted *voir dire. See Turner v. Commonwealth*, 221 Va. 513, 521, 273 S.E.2d 36, 41 (1980), *cert. denied*, 451 U.S. 1011 (1981). Trial counsel made strategic decisions concerning *voir dire* and other issues of which appellant now complains. Counsel decided in advance of trial that the brutality of the criminal acts could not be kept from the jury and that to prevail, the defense would seek to gain favor of the jurors by never appearing to conceal anything from them. The defense would concede the acts were dastardly, but deny that appellant committed them.

Trial counsel concluded that if a juror responded that he favored capital punishment, they would not ask him whether he was predisposed to capital punishment in an appropriate case because it would be reasonable to assume that counsel would be asked to define an "appropriate case." If counsel asked simply if the juror was predisposed to capital punishment in *every* case this might tend to aggravate an intelligent juror, and such aggravation would be contrary to their planned strategy. Trial counsel observed the jurors, heard their oral responses and prior to the impaneling of the jury made mental judgments that there was no reason to be displeased with the prospective jury.[1]

Trial counsel pursued the standard objection to the exclusion of jurors who stated clear objection to the death penalty by noting

---

[1] No juror, with the possible exception of a juror named Stokes, gave an answer indicating prejudice against appellant and he was stricken for cause by the trial judge. Stokes told the court that he knew appellant and did not feel he could give him a fair trial. Trial counsel privately asked appellant if it was "good or bad" and he responded "Bad." Counsel concluded that further inquiry of Stokes was likely to prejudice the remaining venire against appellant to the detriment of the planned defense.

that such exclusion "is to load the deck in favor of the Commonwealth" and is a denial of equal protection and due process. All the appropriate arguments on this point were made by trial counsel, including an appeal to the Supreme Court of Virginia. *See Stamper v. Commonwealth*, 220 Va. 260, 269, 257 S.E.2d 808, 815 (1979), *cert. denied*, 445 U.S. 972 (1980). The failure to succeed on this issue was not due to counsel's errors. Moreover, "excluding prospective capital sentencing jurors because of their opposition to capital punishment is no different from excluding jurors for innumerable other reasons which result in bias . . . ." *Wainwright v. Witt*, 469 U. S. 412, 429 (1985).

Viewing this record in its entirety we find nothing in the strategy or record which proves that trial counsel's performance in the jury selection process was deficient and the record fails to establish that there is a reasonable probability that the outcome would have been different if trial counsel had followed the hindsight procedure suggested by appellant's present attorneys.

## B. Pretrial Publicity

The prospective jurors were questioned by the trial judge as to whether they possessed any knowledge of the facts of this case. They further were asked whether they could disregard any knowledge received from the news media or other sources and arrive at a verdict based solely on the evidence they would hear in the courtroom and instructions of law from the court. Each prospective juror indicated that he could. The inquiry made by the court was sufficient. Further inquiry by trial counsel would not have been consistent with their trial strategy and might have produced the adverse result they sought to avoid. As to the claim concerning pretrial publicity, no deficient performance has been shown and appellant has failed to demonstrate a reasonable probability that the outcome would have been different if the inquiries as to pretrial publicity suggested by appellant's present counsel had been made.

Courts do not "confine [their] review of the correctness of the trial court's action on *voir dire* only to portions of the questioning." *Clozza v. Commonwealth*, 228 Va. 124, 128, 321 S.E.2d 273, 276 (1984), *cert. denied*, 469 U.S. 1230 (1985) (citation omitted). Appellant here attempts to use isolated responses of ju-

rors to show a taint which clearly does not exist when the record as a whole is considered. We reject the contention that the jury which convicted him was in anyway unfairly chosen or constituted, and further reject the contention that trial counsel's participation in the selection process failed to meet established standards.

## IV. *JURORS PASSING NEAR THE SCENE AND HEARING PUBLICITY*

Appellant further contends that trial counsel were ineffective because they did not attempt to prove three jurors had committed "jury misconduct." The record discloses that one juror heard "a few words" of a radio report but tuned it out as soon as he comprehended its relationship to the trial. Two other jurors drove past the property where the robbery occurred. The trial court's inquiries adequately established that neither juror was affected by what was seen or heard. We believe that further inquiry by trial counsel might have produced the adverse effect they sought to avoid rather than the results suggested by present counsel. Under the circumstances of this case neither deficient performance nor prejudice to the defense has been shown.

## V. *THE INSTRUCTION FOLLOWING THE JUROR'S QUESTION*

At trial, after both sides rested, one of the jurors advised the trial court that he would like to propound several questions to counsel. With the consent of all counsel, out of the presence of the other jurors, the juror was permitted to address the trial court and counsel. The juror stated that it had not been established to his satisfaction whether the person firing the weapon was positioned in front or to the rear of the victim in every instance; contingent on the resolution of that question, the juror asked whether the defendant "is right or left handed," and contingent on the resolution of that question whether "there have been additional arrests of a possible accomplice in the crime." After advising the court of his concerns the juror returned to the jury room. The Commonwealth objected to the introduction of further evidence, and when the trial court indicated it would advise the jury concerning the arrest of an accomplice trial counsel objected to the court giving such an instruction to the jury.

Appellant's present counsel argues that by agreeing to the court's proposed instruction to the jury that they would have to decide from the evidence whether more than one person was involved, trial counsel's performance was so deficient and the prejudice so great that the outcome of the trial would have been different. Trial counsel in fact skillfully prevented the trial judge from using the word "accomplice" in its instruction; trial counsel likewise prevented use of the phrase "similar charges are pending against another defendant," and the phrase "there is testimony that there was another black male in the car that evening." The actual instruction given to the jury was as follows:

One question related to whether or not there was more than one person involved in this affair. That is really irrelevant to the issue of guilt of this defendant. The issue here was is this defendant involved? If the jury thinks more than one was or if the jury thinks only one was, that's - the jury may think as they see fit from the evidence, but the issue before this jury with respect to this defendant is was he personally involved?

Appellant's conviction was appealed to the Supreme Court of Virginia by trial counsel. *See Stamper v. Commonwealth*, 220 Va. 260, 257 S.E.2d 808 (1979), *cert. denied*, 445 U.S. 972 (1980). Among other grounds of appeal, error was assigned to the manner in which the trial court handled the juror's question concerning a possible accomplice. The Supreme Court noted the several instruction variations discussed and that while trial counsel did not like the form of the final version they conceded that it was "better." *Id.* at 275, 257 S.E.2d at 818. In its opinion the Supreme Court stated that this did not constitute an objection as required by the rules but proceeded to hold[2] that "there is no merit to the objection" and that the "instructions adequately informed the jury." *Id.*, 257 S.E.2d at 819. Trial counsel's performance relating to that instruction was neither deficient nor prejudicial.

We have examined the records, transcripts and briefs presented to us and conclude there has been no showing that the perform-

---

[2] Former Rules 5:18 and 5:21 authorized the court to consider matters not objected to when necessary to meet the ends of justice.

ance of trial counsel was so deficient as to have deprived appellant of a fair trial. We find that there has been no demonstration that appellant has been prejudiced or that the results would have been different if the tactics suggested by appellant's habeas counsel had been employed.

We further find that appellant had a fair trial and, accordingly, the judgment of the habeas court is

*Affirmed.*

Koontz, C.J., and Keenan, J., concurred.