**Derick Lynn PETERSON, Petitioner–Appellant,**

v.

**Edward W. MURRAY, Director of the Virginia Department of Corrections, Respondent–Appellee.**

No. 89–4012.

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1990.

Decided May 24, 1990.

Rehearing and Rehearing In Banc Denied June 18, 1990.

---

Joe Gray Lawrence, Jr., Howell, Daugherty, Brown & Lawrence, Norfolk, Va., for petitioner-appellant.

Richard Bain Smith, Asst. Atty. Gen. (argued), Mary Sue Terry, Atty. Gen., on brief, Richmond, Va., for respondent-appellee.

Before HALL, SPROUSE, and WILKINSON, Circuit Judges.

SPROUSE, Circuit Judge:

Through this habeas corpus proceeding, Derick Lynn Peterson collaterally attacks a Virginia state court judgment convicting him of capital murder and sentencing him

to death. The United States District Court for the Eastern District of Virginia dismissed his petition for a writ of habeas corpus. We affirm.

## I.

Peterson was convicted of fatally shooting Howard Kauffman during the robbery of a Hampton, Virginia, grocery store on February 7, 1982. The details of the crime are recounted in the opinion affirming his conviction on direct appeal. *Peterson v. Commonwealth*, 225 Va. 289, 292–93, 302 S.E.2d 520, 523, *cert. denied*, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 *reh'g denied*, 464 U.S. 1004, 104 S.Ct. 515, 78 L.Ed.2d 702 (1983). Peterson was tried before a jury and found guilty of capital murder, robbery, and use of a firearm in the commission of a felony. The jury fixed his punishment at life imprisonment for the robbery and three years for the firearm count. A separate proceeding was then held before the same jury to set Peterson's penalty for the capital murder. *See* Va.Code Ann. § 19.2–264.3(C). The Commonwealth sought the death penalty, urging that there was a probability Peterson "would commit criminal acts of violence that would constitute a continuing serious threat to society." Va.Code Ann. § 19.2–264.4(C).[1]

During the penalty trial, the Commonwealth presented three witnesses. Two of them, Sheila Coffey and Carrie Ann Baize, were victims of other armed robberies by Peterson. Baize testified that Peterson held up a drug store the morning after Kauffman's murder and—apparently by accident—shot a woman. Baize also said Peterson had threatened her when she testified at a preliminary hearing. The Com-

monwealth's third witness was a probation officer who testified about Peterson's record, including several adult felony convictions and a number of juvenile charges, some of which were resolved at intake, dismissed, or not prosecuted. Peterson's trial counsel did not object. Peterson's mother testified on his behalf.

During its deliberations, the jury asked the court whether it was possible to give a life sentence without parole. The court responded:

> The only response I can give you on that, Mrs. [Forewoman], is that it's the function of the jury, duty of the jury, to impose such sentence as they consider just under the evidence and the instructions of the Court.

> And you should not concern yourself with what may thereafter happen. It may not be a very satisfactory answer, but it's the only one I can give you.

The jury recommended the death sentence. Peterson's convictions and sentences were affirmed on direct appeal. *Peterson v. Commonwealth*, 225 Va. 289, 302 S.E.2d 520, *cert. denied*, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 *reh'g denied*, 464 U.S. 1004, 104 S.Ct. 515, 78 L.Ed.2d 702 (1983).

Peterson next petitioned for a writ of habeas corpus in the Circuit Court of the City of Hampton. The petition was dismissed and Peterson appealed to the Virginia Supreme Court, which transferred his case to the Virginia Court of Appeals. A panel of the intermediate appeals court dismissed the death penalty part of the appeal,[2] holding it did not have jurisdiction to consider a case in which a sentence of death had been imposed.[3] *Peterson v.*

---

**1.** In Virginia, the death penalty may be imposed only upon proof beyond a reasonable doubt of the defendant's future dangerousness or "that his conduct in committing the offense was outrageously or wantonly vile, horrible or inhuman...." *Id.* Here, the Commonwealth sought the death penalty solely on the basis of Peterson's future dangerousness.

**2.** The court considered and rejected Peterson's non-capital arguments. *Peterson v. Bass*, 2 Va. App. 314, 318–21, 343 S.E.2d 475, 478–80 (1986).

**3.** Peterson's habeas appeal was transferred to the Court of Appeals three days after the Virgi-

nia Supreme Court dismissed *Titcomb v. Wyant*, 323 S.E.2d 800 (1984), ruling that the intermediate state court had exclusive jurisdiction over habeas appeals pursuant to Va.Code Ann. §§ 17–116.04 and 17–116.05:4. The *Titcomb* case, like Peterson's, involved a habeas appeal from a state circuit court directly to Virginia's highest court. However, *Titcomb* was not a death penalty case. Va.Code Ann. § 17–116.05:1 provides that the Virginia Court of Appeals does not have jurisdiction over cases in which a death sentence has been imposed.

Subsequent to the *Titcomb* decision and the filing of Peterson's notice of appeal, § 17–116

*Bass*, 2 Va.App. 314, 316–18, 343 S.E.2d 475, 477–78, *aff'd en banc by an equally divided court*, 349 S.E.2d 409 (1986). Peterson appealed that jurisdictional question to the Virginia Supreme Court, which affirmed the decision of the Court of Appeals but also "reviewed the issues presented to but not decided by the Court of Appeals" and concluded they were without merit. Peterson's petitions for rehearing and certiorari were denied. 484 U.S. 933 (1987).

Peterson then sought relief in federal district court, which denied his petition for a writ of habeas corpus. It is from this order that Peterson now appeals.

## II.

Peterson raises constitutional challenges concerning the future dangerousness factor in Virginia's capital sentencing scheme, the introduction of his juvenile records, the failure to inform the jury about parole, and the proportionality review conducted by the Virginia Supreme Court. Peterson also asserts that he was denied effective assistance of counsel at trial. We review these contentions *seriatim*.

### A. *Future Dangerousness*

■ Peterson submits that imposition of the death penalty based on a jury finding of future dangerousness is unconstitutionally arbitrary because future dangerousness cannot be accurately or reliably predicted. The Supreme Court has explicitly rejected this contention, explaining that

> prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system.... [A]ny sentencing authority must predict a convicted person's probable future conduct when it engages

in the process of determining what punishment to impose. For those sentenced to prison, these same predictions must be made by parole authorities. The task that a ... jury must perform in answering the statutory question in issue is thus basically no different from the task performed countless times each day throughout the American system of criminal justice.

*Jurek v. Texas*, 428 U.S. 262, 275–76, 96 S.Ct. 2950, 2957–58, 49 L.Ed.2d 929 (1976) (footnotes omitted); *see also Barefoot v. Estelle*, 463 U.S. 880, 896–97, 103 S.Ct. 3383, 3396, 77 L.Ed.2d 1090 (1983). In light of *Jurek*, we have held the constitutionality of Virginia's future dangerousness provision to be "beyond question." *Briley v. Bass*, 750 F.2d 1238, 1245 (4th Cir.1984), *cert. denied*, 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985); *Giarratano v. Procunier*, 891 F.2d 483, 489 (4th Cir.1989). These cases control the result here. *See also Smith v. Commonwealth*, 219 Va. 455, 476–79, 248 S.E.2d 135, 148–49 (1978), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2419, 60 L.Ed.2d 1074 (1979).

### B. *Juvenile Records*

■ Peterson asserts that his constitutional rights were violated when a probation officer recounted Peterson's juvenile record during the penalty trial. He urges that Virginia has established a statutory scheme designed to strictly limit access to juvenile records, *see* Va.Code Ann. §§ 16.1–299 *et seq.*, and that no provision of Virginia law authorizes the introduction of juvenile records in a capital sentencing proceeding before a jury. Peterson claims that by departing from its own regulations the Commonwealth denied him due process of law. *See generally Bluth v. Laird*, 435 F.2d 1065, 1071 (4th Cir.1970).[4]

was amended to give the Virginia Supreme Court exclusive appellate jurisdiction of all habeas cases. *See* § 17–116.05:1(B).

**4.** Peterson submits that this issue is particularly important in light of an "inconsistency" in the Virginia death penalty statutes. *Compare* Va. Code Ann. § 19.2–264.2 (considering the defendant's "past criminal record of convictions") *with* § 19.2–264.4(C) (referring to the "prior history of the defendant"). However, this court

and the Virginia Supreme Court have rejected vagueness challenges to the statute based on this difference in phrasing. In *Giarratano*, 891 F.2d at 490, we concluded it was "not significant" that § 19.2–264.4(C) "allows a broader range of evidence to be considered." *See also LeVasseur v. Commonwealth*, 225 Va. 564, 593–94, 304 S.E.2d 644, 660 (1983), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984); *Smith*, 219 Va. at 477–78, 248 S.E.2d at 148–49.

We find no merit to Peterson's contention that Virginia proscribes the use of a defendant's juvenile record in capital sentencing. In fact, the opposite is true: the Virginia Supreme Court has held that "evidence relating to juvenile offenses and unadjudicated criminal activity" is admissible because "a trier of fact called upon to decide whether or not to impose the death sentence is entitled to know as much relevant information about the defendant as possible." *Beaver v. Commonwealth*, 232 Va. 521, 528–30, 352 S.E.2d 342, 346–47, *cert. denied*, 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987); *O'Dell v. Commonwealth*, 234 Va. 672, 700, 364 S.E.2d 491, 507, *cert. denied*, 488 U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 154 (1988). The court applied this principle in Peterson's direct appeal, explicitly stating that Virginia's capital sentencing provisions do "not restrict the admissible evidence to the record of convictions." 225 Va. at 298, 302 S.E.2d at 526.

Contrary to Peterson's assertions, this line of cases does not conflict with Virginia statutory law governing juvenile court records. Indeed, the same provision that protects the confidentiality of juvenile records makes those records available for preparation of presentence reports. *See* Va.Code Ann. § 16.1–305(A)(4).[5] We therefore do not reach the constitutional issue advanced by Peterson.[6]

### C. *Parole*

■ Peterson next asserts that the sentencing jury should have been "told of the effects of parole," presumably that, under a life sentence, Peterson would have been ineligible for parole for twenty years.[7] The Virginia Supreme Court rejected this argument on Peterson's direct appeal, stating that "it is improper to inform the jury as to the possibility of parole." 225 Va. at 297, 302 S.E.2d at 525. *See Williams v. Commonwealth*, 234 Va. 168, 178–80, 360 S.E.2d 361, 367–68 (1987) (collecting cases), *cert. denied*, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Peterson urges that this holding is unconstitutional because it prevents the jury from considering relevant mitigating evidence. *See McCleskey v. Kemp*, 481 U.S. 279, 304, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *Lockett v. Ohio*, 438 U.S. 586, 604–05, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978) (plurality opinion); *see generally McKoy v. North Carolina*, —— U.S. ——, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). He points to *California v. Ramos*, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983), in which the Supreme Court upheld California's requirement that a capital sentencing jury be instructed that the governor has the power to commute a life sentence. Peterson urges that, if the Supreme Court's wide-ranging evidentiary standard for capital sentencing proceedings supports the result in *Ramos*, it certainly mandates that juries be informed about the prospect of the defendant's parole. *Cf. id.* at 1001–04 & n. 19, 103 S.Ct. at 3453–55 & n. 19.

We disagree; we believe that *Ramos* left to the states the decision concerning what, if anything, a jury should be told about commutation, pardon, and parole. *Cf. id.* at 1013–14 & n. 30, 103 S.Ct. at 3459–60 & n. 30.[8] "While not exactly on point, we

---

5. Va.Code Ann. § 16.1–305(A)(4) states in part: [F]or the purposes of preparation of a presentence report upon a finding of guilty in a circuit court ..., adult probation and parole officers shall have access to an accused's or inmate's record in juvenile court.

6. We note, however, our holding in *Barfield v. Harris*, 719 F.2d 58, 61 (4th Cir.1983), *cert. denied*, 467 U.S. 1210, 104 S.Ct. 2401, 81 L.Ed.2d 357 (1984), that state violations of state law do not, without more, present a cognizable federal claim.

7. Under Va.Code Ann. § 53.1–151(D), twenty years is the minimum term of imprisonment for a defendant receiving two life sentences. Peter-

son had already been sentenced to life for the robbery in this case.

8. Any information conveyed to the jury must, of course, be "accurate and relevant to a legitimate state penological interest...." *Caldwell v. Mississippi*, 472 U.S. 320, 335, 105 S.Ct. 2633, 2642, 86 L.Ed.2d 231 (1985). Concerning the prohibition of evidence concerning parole, the Virginia Supreme Court has explained: "A reduced sentence is not the responsibility of the judiciary but of the executive department, and argument as to what the department might do encroaches upon the separation of their functions." *Williams*, 234 Va. at 179, 360 S.E.2d at 368 (citations omitted).

think *Ramos* indicates that the Court would decide that while it is constitutionally permissible to instruct the jury on the subject of parole, such an instruction is not constitutionally required." *Turner v. Bass,* 753 F.2d 342, 354 (4th Cir.1985), *rev'd on other grounds sub nom. Turner v. Murray,* 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986). Our holding in *Turner* controls here. *Accord O'Bryan v. Estelle,* 714 F.2d 365, 388–89 (5th Cir.1983), *cert. denied,* 465 U.S. 1013, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *cf. Boyde v. California,* — U.S. —, 110 S.Ct. 1190, 1196, 108 L.Ed.2d 316 (1990) ("states are free to structure and shape consideration of mitigating evidence").

### D. *Proportionality Review*

■ Peterson argues that the proportionality review conducted by the Virginia Supreme Court was constitutionally flawed. While proportionality review is not mandated under the Constitution, *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), the Virginia code requires review of "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." Va.Code Ann. § 17–110.1(C)(2). Peterson asserts that his due process and equal protection rights were violated by the manner in which the Virginia high court conducted this review. He argues that the court erred by considering only cases in which the death penalty had been imposed, and not those in which the death penalty had been sought but the defendant received another sentence.

The Virginia Supreme Court discussed its proportionality review mechanism in *Whitley v. Commonwealth,* 223 Va. 66, 81, 286 S.E.2d 162, 171, *cert. denied,* 459 U.S. 882, 103 S.Ct. 181, 74 L.Ed.2d 148 (1982), which was decided prior to Peterson's direct appeal:

> All capital murder cases, including not only those in which the death penalty was imposed and reviewed by this Court but also those in which the jury or trial judge imposed a life sentence and the defendant petitioned this Court for appeal of his conviction, have been inventoried and indexed apart from other criminal cases.

*See also* Va.Code Ann. § 17–110.1(E). Peterson asserts that if the court had conducted a full *Whitley* review in his case, it would have said so. Instead, he urges that the court considered only cases in which the death penalty had been imposed.

However, in examining Peterson's sentence, the Virginia Supreme Court stated that "we have examined the records in all capital-murder cases reviewed by this Court, with particular emphasis given those cases in which the death sentences were based upon the probability that the defendants would be continuing threats to society." 225 Va. at 301, 302 S.E.2d at 528. As the United States District Court reasoned:

> The [Virginia Supreme] Court clearly states that it reviewed *all* cases, but decided to place emphasis on cases most similar to petitioner's where the death penalty was imposed based on future dangerousness. There is nothing violative of due process where the Virginia Supreme Court reviews all capital murder cases but decides to place weight with cases most similar to the case at bar.... [T]here is no statutory requirement that the Virginia Supreme Court review and *discuss* each and every capital murder case in its opinion, *see* Va. Code Ann, § 17–110.1, and indeed, such a requirement would be questionable in its wisdom. As the Virginia Supreme Court stated, *supra,* that it reviewed all such cases, this Court will accept that statement as true.

We agree with and adopt this analysis. In any event, "this court may not issue a writ of habeas corpus on the ground that the [Virginia] Supreme Court has made an error of state law." *Shaw v. Martin,* 733 F.2d 304, 317 (4th Cir.), *cert. denied,* 469 U.S. 873, 105 S.Ct. 230, 83 L.Ed.2d 159 (1984); *see also Pulley,* 465 U.S. at 41–42, 104 S.Ct. at 874–75.

### E. *Ineffective Assistance of Counsel*

Finally, Peterson urges that his counsel was ineffective during the guilt and penal-

ty stages of his trial. Our consideration of these claims is, of course, governed by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which holds that a defendant claiming ineffective assistance of counsel "must show that counsel's representation fell below an objective standard of reasonableness" and that this "deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064.

Peterson's first three allegations of ineffective assistance of counsel relate to issues discussed *supra*. He submits that counsel was ineffective in failing (1) to call an expert witness challenging the reliability of the future dangerousness criterion, (2) to object to the introduction of Peterson's juvenile record or to offer explanatory evidence to the jury, and (3) to present evidence or request the jury be told about parole. Having examined the merits of these claims and having discerned no error, we conclude that Peterson was not prejudiced by counsel's failure to raise them at trial. *See id.* at 697, 104 S.Ct. at 2069.

Peterson also asserts that his counsel was ineffective in failing to object to two jury instructions. The first was offered during the guilt phase of the trial:

> You may infer malice from the deliberate use of a deadly weapon unless, from all the evidence, you have a reasonable doubt as to whether malice existed.

> A "deadly weapon" is any object or instrument, not a part of the human body, that is likely to cause death or great bodily injury because of the manner, and under the circumstances, in which it is used.

Peterson says this instruction impermissibly shifted the burden of persuasion from the prosecution to the defense. *See Francis v. Franklin*, 471 U.S. 307, 316–18, 105 S.Ct. 1965, 1972–73, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 514–24, 99 9S.Ct. 2450, 2454–59, 61 L.Ed.2d 39 (1979); *Hyman v. Aiken*, 824 F.2d 1405, 1409–10 (4th Cir.1987); *Baker v. Muncy*, 619 F.2d 327, 330–32 (4th Cir.1980). However, Peterson relies on cases in which the jury could have understood the instruction as creating a presumption and thereby shifting the burden of persuasion. Here, the instruction was not burden-shifting.

The responsibility of the trier of fact is "to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The disputed "charge merely instructed the jury as to what a reasonable inference would be. The individual jurors were not required to draw any inference." *United States v. Love*, 767 F.2d 1052, 1059 (4th Cir.1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986). This is particularly clear when the instruction is viewed in the context of the entire charge. *See Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). It distinctly told the jury that the Commonwealth bore the burden of proving each element of the crime and that there was "no burden on the defendant to produce any evidence." *See Warlitner v. Weatherholtz*, 447 F.Supp. 82, 87 (W.D.Va.1977) (holding similar instruction constitutional), *appeal dismissed*, 598 F.2d 617 (4th Cir.1979); *see also Reeves v. Reed*, 596 F.2d 628 (4th Cir.1979) (approving similar instruction).

Considering the disputed instruction both in isolation and in context, we do not think there was a "reasonable likelihood" that the jury could have interpreted it as relieving the prosecution of its burden. *See Boyde v. California*, —— U.S. ——, 110 S.Ct. 1190, 1197, 108 L.Ed.2d 316 (1990). Because the instruction was constitutional, Peterson was not prejudiced by his counsel's failure to object to it. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

Peterson also contends that his counsel was ineffective in failing to object to an instruction given during the penalty phase of his trial. The instruction first explained that the Commonwealth was required to prove beyond a reasonable doubt one of two statutory aggravating circumstances, future dangerousness or vileness. *See* Va.Code Ann. § 19.2–264.4(C). The instruction then continued:

> If you find from the evidence that the Commonwealth has proven beyond a reasonable doubt either of the two alterna-

tives, then you may fix the punishment of the defendant at death or if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the defendant at life imprisonment.

If the Commonwealth has failed to prove either alternative beyond a reasonable doubt, then you shall fix the punishment of the defendant at life imprisonment.

Peterson asserts that this instruction improperly placed on him the burden of proving that the death penalty was not justified. Again, we do not think there is a reasonable likelihood that the jury, considering the language in context, would have understood the instruction as placing the burden on Peterson. We have already reviewed a virtually identical instruction and found it to be constitutional in *Briley v. Bass,* 750 F.2d 1238, 1242–44 (4th Cir.1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1855, 85 L.Ed.2d 152 (1985). We therefore hold that Peterson's counsel was not ineffective in failing to object to the instruction here.

### III.

In conclusion, because we find no constitutional error, we affirm the decision of the district court dismissing Peterson's petition for a writ of habeas corpus.

AFFIRMED.